STATE v. ROBERT RAY STARK.

179 N. W. (2d) 597.

September 4, 1970—No. 42194.

*Stewart R. Perry,* for appellant.

*Douglas M. Head,* Attorney General, *George M. Scott,* County Attorney, and *Henry W. McCarr, Jr.,* and *David G. Roston,* Assistant County Attorneys, for respondent.

ROGOSHESKE, JUSTICE.

This is an appeal from a judgment convicting defendant of the crime of aggravated robbery in violation of Minn. St. 609.245 and 609.05.

At approximately 12 noon on November 15, 1968, Ida Lerner was robbed of $12,600 by two men, who knocked her down,

grabbed her purse, and fled to a waiting car. The robbery took place along the east side of the First National Bank on Washington Avenue and West Broadway in Minneapolis. The two fleeing robbers entered a slowly moving 1962 red Lincoln Continental which had been parked alongside the west side of the bank near the rear of the bank. A third man was behind the wheel of the Lincoln, and when the two assailants entered the car, it sped away.

Thomas Omann, intending to go into the bank, had parked his automobile about 6 feet from the Lincoln shortly before the robbery. At the trial resulting in defendant's conviction, Omann identified defendant as the man sitting behind the wheel with the engine running. Omann testified that as he walked past the Lincoln he "stared [defendant] in the eye." The witness subsequently described defendant as being 5 feet 8 inches tall, weighing 220 pounds, and having dark-black hair and a round face. Omann also said that although defendant did not have a beard, he appeared to have not shaved for a day; also, that he wore a dark jacket. Edwin Buck, another witness to the robbery, obtained the license number of the Lincoln and gave it to the police.

A check of the license number of the car revealed that it was registered to Robert Stark, 5025 Mississippi Court, Minneapolis.

At 12:30 p. m. on the same day, defendant drove the Lincoln into the shop of Auto Reconditioning Company in Minneapolis. He parked the car, threw his jacket through an open window, and left. Two employees, John Pugh and Wendell Philmalee, identified defendant in court as the man who drove the car in and left it. The police impounded the car.

Omann, Pugh, and Philmalee originally identified defendant from photographs shown to them by the police.

By January 13, 1969, the police knew that the Lincoln was registered in the name of defendant; that his address was 5025 Mississippi Court; and that the jacket obtained from the Lincoln belonged to defendant. They were also in possession of a "mug shot" photograph of defendant. By this time they had inquired

of those living in the apartment building at 5025 Mississippi Court and were advised that no one by defendant's name resided in the building. On January 13, a detective from the Minneapolis Police Department brought several pictures to the office of the apartment building and, after exhibiting the pictures of defendant to two persons residing in the apartment building, was advised that defendant was living there under the name of John Luzaich (his wife's maiden name); and that he was presently at the apartment but was preparing to move or was "in the process of moving." Thereupon, officers were directed to proceed into the apartment and arrest defendant. The arrest occurred on January 13 at about 6:30 p. m. The officers gained entrance to the apartment by permission of defendant's wife and immediately confronted defendant, informing him that he was under arrest and that the charge was for a robbery, without specifying the particular robbery giving rise to defendant's arrest. It is admitted that the arresting officer, Robert Burlager, had no personal knowledge of the facts justifying the arrest except knowledge that there was a pickup order for defendant. Officer Burlager had obtained a photograph of defendant at the police roll call.

Defendant was taken to the police station and a lineup occurred the following afternoon on January 14. He was identified by three witnesses as the driver of the Lincoln. Immediately following the lineup, a complaint and warrant for his arrest were served on him. Preliminary hearing was held on January 15. On February 27, defendant appeared, represented by privately retained counsel whom he had called at the time of arrest, and challenged the jurisdiction of the district court, claiming that he was illegally arrested. His motion for dismissal was denied. Upon arraignment on the same day, he pleaded not guilty.

Thereafter defendant moved to suppress the identification testimony of the witnesses resulting from their observation and selection of defendant in the lineup. This motion was also denied following a hearing held on March 17. On March 18, defendant's

trial commenced. On March 21, the jury returned a verdict of guilty. Judgment and sentence for an indeterminate term of up to 10 years were imposed on April 25, 1969. This appeal is from the judgment.

Defendant raises three issues. The first is whether he was illegally arrested; the second is whether the lineup was conducted in a manner which violated his fundamental rights and therefore the identification should have been suppressed; and the third is whether the evidence is sufficient to support the conviction.

■ We hold that the arrest was lawful even though no arrest warrant had been issued. Where no warrant has been issued, a police officer may make a lawful arrest if a crime has been committed and if the officer has probable cause for believing the person arrested committed the crime. Minn. St. 629.34(3).[1] In this case the police were in full possession of facts which showed a crime had been committed and that defendant was the driver of the get-away vehicle.

The arresting officer was a patrolman who did not personally know all these facts but, as a matter of police routine, he had been told that defendant was wanted for robbery and he had been given the defendant's photograph. When he was given the order to arrest the defendant, it appeared that the defendant was about to flee. Defendant argues that because the arresting officer did not have sufficient knowledge or information to establish probable cause, the arrest was illegal. This is not the correct test.

---

[1] Although warrantless arrests are not favored where prosecuting authorities have a reasonable opportunity to secure a warrant, State v. Mastrian, 286 Minn. 51, 171 N. W. (2d) 695, an arrest without a warrant on probable cause, as here, is proper where the circumstances are such as to lead the arresting officer to a reasonable belief that an immediate arrest is essential to prevent escape. Council of Judges of The National Council on Crime and Delinquency, Model Rules of Court on Police Action from Arrest to Arraignment, Rule 11. See, also, A. L. I., A Model Code of Pre-Arraignment Procedure, Tentative Draft No. 2, § 3.01(1) and Commentary.

The test is whether the law-enforcement agency as a corporate body possessed sufficient information to establish probable cause. Smith v. United States, 123 App. D. C. 202, 358 F. (2d) 833; Farrow v. State, 233 Md. 526, 197 A. (2d) 434; State v. Radil, 288 Minn. 279, 179 N. W. (2d) 602. In this case probable cause was established by all information possessed by police as a unit and therefore the arrest was lawful.

Defendant also contends that while making the arrest the police officer failed to comply with Minn. St. 629.35, which requires that when making an arrest at night without a warrant, the officer shall inform the person arrested of his authority and "the cause of the arrest." In this case the officer identified himself and told defendant he was being arrested for robbery. He did not, or was unable to, tell defendant for which particular robbery he was being arrested.

Under these circumstances we hold that there was substantial compliance with Minn. St. 629.35. The cause of the arrest was a robbery and defendant was informed of this fact. Section 629.35 was not intended to require that the police give a precise and detailed explanation for each arrest, but rather its purpose is to give notice to the person being arrested of the nature of the crime for which he is being arrested.

The state argues that by defending on the merits and by failing to seek a writ of prohibition in this court after the trial court sustained its jurisdiction against defendant's pretrial challenge to it, defendant waived any defects in jurisdiction caused by his arrest. State v. Burch, 284 Minn. 300, 170 N. W. (2d) 543. See, also, City of St. Paul v. Webb, 256 Minn. 210, 97 N. W. (2d) 638, 76 A. L. R. (2d) 1423.

The Burch case has provoked a rash of applications by defense counsel for writs of prohibition upon the assumption that the issue of illegal arrest is not reviewable on appeal. We, therefore, take this opportunity to clarify our holding in Burch.

If an illegal arrest is made and no inculpatory evidence is seized or incriminating statements made, then the defendant,

to avoid waiving his right to contest the jurisdiction of the court, must seek a writ of prohibition if in a special appearance the trial court sustains its jurisdiction. This is the basis of our holding in State v. Mastrian, 286 Minn. 51, 171 N. W. (2d) 695. But where inculpatory evidence is seized or incriminating statements made and such evidence is inadmissible because of an illegal arrest, any conviction based on such tainted evidence will be set aside on review whether or not defendant has sought a writ of prohibition.

■ We hold that the lineup where defendant was identified by three witnesses did not violate any of his rights.

It is not contended by defendant that the lineup was conducted unfairly. Defense counsel was, in fact, present, as required by United States v. Wade, 388 U. S. 218, 87 S. Ct. 1926, 18 L. ed (2d) 1149, and participated in the selection of the men who comprised the lineup. There is also no evidence that the witnesses were improperly influenced before the lineup by the use of "mug shots." State v. Gluff, 286 Minn. 148, 172 N. W. (2d) 63; State v. Burch, *supra*. In the instant case two of the witnesses had been shown a group of 12 such photographs about 2 months prior to the lineup, one had been shown a group of 150, and each had picked out the defendant's photograph. In Gluff, the witness was shown only the defendant's photograph a few moments prior to the lineup. In this case, the use of the photographs was incidental to the police investigation and did not present the dangers of misidentification present in Gluff. State v. Clark, 286 Minn. 419, 176 N. W. (2d) 123.

Defendant contends that because the police refused to allow his attorney to be present in the room where the witnesses were reviewing the lineup through a one-way mirror, his right to have counsel present at the lineup under Wade was violated. It may well be that the police should have allowed defendant's lawyer to be present in the room with the witnesses, but under the present record this is no showing that the refusal to allow him to be present in any way prejudiced the defendant.

The witnesses were not subjected to any suggestive influences prior to the lineup; defendant's lawyer participated in the selection of the lineup and admitted it was fair; the witnesses when viewing the lineup were told not to speak to each other and not to disclose the number of the man they selected, thereby eliminating the risk that they might influence each other. The lineup, therefore, involved no violation of defendant's constitutional rights.

■ We have reviewed the record and find that the evidence is sufficient to support the conviction.

Taking the evidence most favorable to the state, we find that the jury could have found that defendant drove the Lincoln which he and his two accomplices used to make their escape after robbing Ida Lerner of $12,600. State v. Ellingson, 283 Minn. 208, 167 N. W. (2d) 55; State v. Bagley, 286 Minn. 180, 175 N. W. (2d) 448. The jury disbelieved defendant's story that he rented the car to a person he refused to identify and his wife's testimony that he had a beard at that time. The eyewitness identification by Omann was sufficient by itself. State v. Walters, 262 Minn. 26, 113 N. W. (2d) 468; State v. Garrity, 277 Minn. 111, 151 N. W. (2d) 773. This identification, together with the identifications of defendant by the garage employees as the driver of the red Lincoln less than a half hour after the robbery, was clearly sufficient evidence to permit the jury to find defendant guilty beyond a reasonable doubt.

Affirmed.

MR. JUSTICE KELLY, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.