STATE v. EDWARD JAMES RADIL.*

179 N. W. (2d) 602.

September 4, 1970—No. 41580.

*Certiorari denied, —— U. S. ——, —— S. Ct. ——, —— L. ed. (2d) ——, February 22, 1971.

*Douglas W. Thomson, John R. Wylde, Jr.,* and *Jack S. Nordby,* for appellant.

*Douglas M. Head,* Attorney General, *George M. Scott,* County Attorney, and *Henry W. McCarr, Jr.,* and *David G. Roston,* Assistant County Attorneys, for respondent.

Heard before Knutson, C. J., and Rogosheske, Sheran, Peterson, and Frank T. Gallagher, JJ.

PETERSON, JUSTICE.

This is an appeal from a judgment of conviction of the crime of receiving stolen property. Minn. St. 609.53, 609.52, subd. 3(1), and 609.05.

On the morning of November 7, 1967, Donald J. Engel, a member of the Minneapolis Police Department and liaison officer at Jordan Junior High School in north Minneapolis, received a telephone call from an informant who reported information about stolen men's suits which were in a black 1967 Ford pickup truck with a large gray box on the rear. The informant stated that this truck would be either at the Target store in Crystal or in the 3700 block of Aldrich Avenue North in Minneapolis and that there would be three men—Eddie Radil (the defendant), Richard Grady, and Wayne Steiner—moving merchandise from the truck.

Engel reported this information by telephone to Captain William L. Mahnke of the burglary division, who in turn notified Detectives Donald Schilz and Richard Strom. Schilz and Strom first went to the Target store, but, observing nothing of consequence there, they drove to the Aldrich Avenue address. There they saw a truck exactly matching the description given by the

informer. It was backed partially into a garage, one door of which was closed against the truck. On the driver's side, however, there was a 2-foot opening so that Schilz and Strom could see inside the garage. Standing outside, they noted two unusual circumstances. They saw that the window of the garage had paper taped over it, the obvious effect of which was to prevent observation of activity in the garage if the door were closed. They saw three men, including defendant and another of the named suspects, moving what appeared to be cardboard boxes full of new clothing wrapped in plastic, some specifically identifiable as sweaters, and some skis.

The two detectives went into the garage and made the arrests, at which time defendant was standing over a blue denim bag partially opened and filled with sweaters. It was later determined that the merchandise in the garage was part of $20,000 worth of ski equipment and clothing stolen from Arnie's Ski and Garden Center in Eau Claire, Wisconsin, on November 6 or 7, 1967.

Evidence seized incident to the arrest and introduced at trial, over defense objection, included: The stolen merchandise; a bolt cutter, a pry bar, and three pairs of gloves found inside the truck; and a billfold identified by a former girlfriend as belonging to the defendant, containing a picture of defendant's son, a social security card and driver's license allegedly stolen at a bakery from a Minneapolis man, and several business cards of Tom Benjamin, owner of the truck (offered by the state as a "kit" designed to avoid correct identification if the possessor were stopped by police).

■ Defendant, seeking to suppress the evidence seized at the time of his arrest, contended that the arrest was illegal because it was made without probable cause. We hold, to the contrary, that probable cause for the arrest was abundantly demonstrated. Considering, first, the informant's tip, which was the cause of the arresting officers being in a position independently to observe incriminating actions of defendant and his associates, it

is clear that it came from a reliable informant. Officer Engel, at a pretrial Rasmussen hearing, testified that he had known his informant for about 6 to 8 months and that he had good reason to consider him reliable, in part because he had supplied accurate information on at least one other prior occasion. It appears that the informant had not actually seen the theft or the movement of the suspect merchandise, the information having come to the informant by word of mouth, apparently from one of the participants.[1] The accuracy of the information was, of course, established by the observation of the police responding to the tip, for they located the exactly corresponding truck at the exactly corresponding address and saw three men, including two of the three named suspects, in the act of unloading obviously new merchandise in quantity in a sealed-off garage.

We reject in this connection the claim of defendant that the trial court erred in refusing to order the state to disclose the identity of the informant, defendant having requested such disclosure so that he might pursue a defense of entrapment. Engel testified that his informant had told him that he had nothing to do with the crime and that his motive for informing was his concern that several minor children were aware of the crime and would be adversely influenced were the principals not apprehended. A careful review of the record indicates that nondisclosure of the informant's identity would not unduly prejudice any reasonably apparent defense, certainly not sufficiently to outweigh the manifest public interest in preserving the anonymity of the informant. See, McCray v. Illinois, 386 U. S. 300, 311, 87 S. Ct. 1056, 1062, 18 L. ed. (2d) 62, 70; State v. DeSchoatz, 280 Minn. 3, 157 N. W. (2d) 517; State v. Purdy, 278 Minn. 133, 153 N. W. (2d) 254.

---

[1] The informant added that, while the named men were the only ones immediately involved in the crime, Tom Benjamin, owner of the truck, had knowingly allowed the truck to be so used. The informant had previously reported this truck as the vehicle for transporting stolen merchandise on a prior occasion.

We consider, second, defendant's contention that, quite apart from any right of officer Engel to act upon his informant's tip, the arresting officers, Schilz and Strom, impermissibly acted upon multiple hearsay. In a metropolitan environment, with many police and fast-moving criminal activities, it is unrealistic to demand that each officer in the department personally know all the facts necessary to justify an arrest. The right to act must be judged by the total knowledge of the police department. As then-Judge Warren Burger noted in Smith v. United States, 123 App. D. C. 202, 204, 358 F. (2d) 833, 835, there is this logic to support our holding: More than one officer could go before a magistrate to obtain a warrant on the basis of the sum of their information, and once the warrant was issued none of them would need to participate in the actual arrest. To hold that only an officer with firsthand knowledge of the facts substantiating arrest can limit an accused's freedom would be to defeat the effect of modern police communication. See, State ex rel. Law v. District Court, 276 Minn. 324, 329, 150 N. W. (2d) 18, 22; State v. Stark, 288 Minn. 286, 179 N. W. (2d) 597.

The validity of the arrest is supported by the decisions of this court and of other jurisdictions[2] and is clearly distinguishable from contrary decision in cases cited by defendant.[3] The information given the police by the informant was specifically detailed and was subsequently verified in substantial detail. The information from the informant was not the sole basis of the

[2] Draper v. United States, 358 U. S. 307, 79 S. Ct. 329, 3 L. ed. (2d) 327; State v. Purdy, 278 Minn. 133, 153 N. W. (2d) 254; State v. Bogar, 280 Minn. 191, 158 N. W. (2d) 501; Smith v. United States, 123 App. D. C. 202, 358 F. (2d) 833; Williams v. United States, 113 App. D. C. 371, 308 F. (2d) 326; United States v. Riso (7 Cir.) 405 (2d) 134.

[3] Aguilar v. Texas, 378 U. S. 108, 84 S. Ct. 1509, 12 L. ed. (2d) 723; Henry v. United States, 361 U. S. 98, 80 S. Ct. 168, 4 L. ed. (2d) 134; United States v. Roth (7 Cir.) 391 F. (2d) 507; Worthington v. United States (6 Cir.) 166 F. (2d) 557; Johnson v. United States, 333 U. S. 10, 68 S. Ct. 367, 92 L. ed. 436.

arrest, moreover, for the police acting upon the tip were in a position independently to observe the defendant and his associates engaged in activity which was clearly suspect.[4] Considered in totality, of course, the existence of probable cause is free from doubt.

■ Defendant additionally objected to the introduction of the burglary tools and the billfold, contending that the evidence was without probative value and was unduly prejudicial in tending to show commission of a different crime. We hold otherwise. The state had the burden of proving that defendant intended to receive or conceal *stolen* property. These items of evidence implicated defendant by showing his awareness that the merchandise he was handling in the garage had not arrived at his feet by purely innocent means. The challenged evidence was not inadmissible merely because it might inferentially show involvement of defendant in another crime. As stated in Annotation, 105 A. L. R. 1288, 1289:

"Whenever mental state, scienter, or quo animo constitutes an ingredient of the offense charged, evidence is admissible of acts, conduct, or declarations of the accused which tend to establish such knowledge, intention, or motive, notwithstanding the fact that it may disclose a different crime in law."

Situations may arise in which the evidence of knowledge or intent showing involvement in other criminal activity may be so prejudicial that, even though relevant to some elements of the state's case, it should not be admitted. But this is not such a situation.

■ Defendant contends that the trial court's instructions, particularly its additional instructions, were erroneous. The court initially instructed the jury:

"* * * A Minnesota statute in case provides that whoever

---

[4] See, Arredondo v. State, 168 Tex. Cr. 110, 324 S. W. (2d) 217; McQuaid v. United States, 91 App. D. C. 229, 198 F. (2d) 987.

intentionally receives or conceals stolen property is guilty of the crime of receiving stolen property. * * *

"Within the meaning of the law, a person receives such property when he takes it under his dominion and control. * * *

* * * * *

"If there is to be a conviction in this case, the State must be found, by you, to have established every one of the following elements in this trial, with the required degree of proof.

"One, that on or about November, 1967, at the City of Minneapolis, Hennepin County, Minnesota, the defendant, Edward James Radil, received or concealed the moveable property specified in the Information.

"Two, that this property had been stolen.

"Three, that the defendant, Edward James Radil, knew it had been stolen, but he nevertheless, intentionally, received or concealed it."

At 1:58 p. m. the jury retired. At 3:25 p. m. the jury returned and requested further explanation of receiving and concealing. The court responded—

"* * * the crime involves either receiving or concealing. In either event, it would be necessary that Mr. Radil have had possession of the property; he would be regarded as having possession, if the property was under his dominion or control. He wouldn't necessarily have to have it in his hand, but it could be in his presence or in his custody, and his ability to take possessive control would have to be immediate, must be accessible to him, and exclusively under the control of him, alone, or such as other persons as he might be working with."

At 3:50 p. m. the jury returned a verdict of guilty.

Defendant claims that the additional instruction "confuses the definitions of receiving and concealing, in effect equates both with 'possession,' while at the same time incorrectly defining possession." More particularly, defendant argues that the instructions imply that a mere possibility of possessive control

is an element of the crime and that the jury was led to believe that being in the presence of stolen goods, regardless of one's intent, is enough to convict. We disagree.

The jury was apparently in need of clarification, not as to what constituted intent, but what physical possession was necessary to constitute "receiving and concealing." The supplemental charge noted that defendant must have had "possession of the property" and that he would be regarded as having such only "if the property was under his dominion or control," and if "his ability to take possessive control [was] immediate." As for intent, the additional instruction must be read in light of the original instructions. State v. Parker, 282 Minn. 343, 164 N. W. (2d) 633, which made quite clear that defendant must have specifically intended to receive property which he knew to be stolen.

4. Defendant's contention that the evidence as a whole was insufficient to sustain the conviction is without substance.

Affirmed.

MR. JUSTICE KELLY, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.