## STATE v. GREGORY BRADLEY RUST.

214 N. W. 2d 353.

January 11, 1974—No. 43646.

*C. Paul Jones,* State Public Defender, for appellant.

*Warren Spannaus,* Attorney General, *Curtis D. Forslund,* Solicitor General, and *Robert F. Carolan,* Special Assistant Attorney General, for respondent.

SCOTT, JUSTICE.

Defendant, found guilty by a district court jury of receiving or concealing stolen property, Minn. St. 609.53, contends on this appeal from an order denying his motion for a new trial and from the judgment of conviction that (1) there was, as a matter of law, insufficient credible evidence on which the jury could base a guilty verdict, and (2) the trial court erred in denying

his motion to suppress the stolen property which police seized. We affirm.

We have no difficulty in rejecting the contention that there was insufficient credible evidence.

The property, which included a color television set and an antique grandfather clock, was stolen from farms in Chippewa County on the afternoon of October 29, 1970. There was considerable evidence to establish defendant's connection with the property and his knowledge that the property was stolen property. The most damaging testimony against defendant was that of one Arnold Nielsen, who testified that at about 5:15 p. m. on the same day that the goods were stolen defendant, in the company of one Ellery Wick, brought the items to Nielsen's house in Willmar (which is near Chippewa County) and offered to sell them for a price far below their reasonable market value. Nielsen also testified that defendant, when asked if the goods were stolen, replied that he "wore gloves." Other damaging evidence included testimony from which the jury could infer that defendant and Wick were in the vicinity of the burglaries at the time they occurred.

Defendant would have us reverse his conviction on the ground that Nielsen's testimony, which the jury must have believed in order to find defendant guilty, was as a matter of law not credible. The main point which defendant makes is that Nielsen lied at the preliminary hearing in responding to questions about whether he had informed on defendant. It appears that Nielsen did respond falsely to these questions at the preliminary hearing, possibly because he wanted to preserve his anonymity as an informer; but, in any event, at both the Rasmussen hearing and the trial Nielsen admitted his role as an informant, and at trial the jury learned of the fact that he had given the prior inconsistent testimony and could consider that fact in assessing Nielsen's testimony.

Defendant also argues that Nielsen lied at trial when he testified that he had seen defendant write out a false receipt for the

stolen property, which receipt was introduced in evidence. During the trial a handwriting expert determined that defendant had not written the false receipt that was in evidence, and the state made a judicial admission that Nielsen's son Reggie, who was a friend of defendant, had written out the receipt. However, it is not clear, as defendant contends, that Nielsen was lying. At the Rasmussen hearing he had testified that he saw both defendant *and* Reggie writing out receipts. And at trial, in rebuttal Nielsen's son Calvin testified that both defendant and Reggie had written false receipts but that Reggie had torn up defendant's writing.

Defendant's other main contention is that the Willmar police discovered the property pursuant to an illegal search and that they should not have seized it because they did not have probable cause to believe that the property had been stolen.

The facts relating to this contention are as follows: Between 5:30 and 6 p. m. on October 29, 1970, the same afternoon that the property was stolen, Nielsen, who had in the past given the police reliable information, went to Officer Al Wierschem and told him that defendant and Wick had brought a color television set and a grandfather clock to his house and that he had reason to believe that this was stolen property. Wierschem immediately put the Nielsen residence under surveillance. Then, after receiving a report from authorities in nearby Chippewa County that a grandfather clock had been stolen, Wierschem approached the house and rang the doorbell. Over considerable protest from defendant, who with Wick and others was present in the house, Nielsen gave Wierschem permission to enter. Once in the house Wierschem saw, in plain sight, both the grandfather clock and the color television set which Nielsen had described. Wierschem then placed defendant and the others in the house under arrest. Moments later Wierschem received confirmation of the theft from farms in Chippewa County of not only the grandfather clock but also other items, including the television set.

There is no merit to defendant's contention that the police con-

ducted an unlawful search. Wierschem entered the house with the consent of the owner, Nielsen, and he saw the clock and the television set in plain sight.

The more troublesome question is whether at the time of the arrests and seizure the police had probable cause to believe that the items had actually been stolen. If not, then the police should not have arrested defendant or seized the property. Clearly, the police could properly conclude that Nielsen was a credible informant because they knew Nielsen personally and knew that in the past he had told the truth in giving them information. However, Nielsen may not have given the police enough information so that they could conclude that he had obtained his information in a reliable manner. Apparently all that Nielsen told the police was that he had reason to believe that the property he had seen in his house was stolen. This is conclusory. Were this the only information the police had when they arrested defendant and seized the items, we might have to conclude that the police acted illegally. But, as we pointed out, prior to approaching and entering the house, Wierschem had received information from the authorities in Chippewa County that an antique grandfather clock (a not too common item of personal property these days) had just been reported stolen. This important fact tended to corroborate Nielsen's tip to some degree. Also significant is the fact that defendant conducted himself as he did when Wierschem appeared at the house. His actions—especially in telling Wierschem to stay out of the house and in demanding to know if he was under arrest—surely suggested to the police officer that more than likely Nielsen's information that the property had been stolen was reliable. We conclude that, under the totality of circumstances as they existed at the time of the arrest and seizure, the police had probable cause to believe that the property was stolen and that defendant was guilty of at least receiving or concealing it.

Finally, we reject defendant's contention that the police were obligated to get a warrant before arresting him and seizing the

property. See, Hill v. California, 401 U. S. 797, 91 S. Ct. 1106, 28 L. ed. 2d 484 (1971); State v. Stark, 288 Minn. 286, 179 N. W. 2d 597 (1970), certiorari denied, 402 U. S. 930, 91 S. Ct. 1529, 28 L. ed. 2d 864 (1971).

Affirmed.

MR. CHIEF JUSTICE SHERAN, not having been a member of this court at the time of the submission, took no part in the consideration or decision of this case.