*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1816**

Stephanie Ann Keim, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent.

**Filed August 25, 2014
Affirmed
Reilly, Judge**

Wright County District Court
File No. 86-CV-13-2713

Kirk M. Anderson, Anderson Law Firm, PLLC, Minneapolis, Minnesota (for appellant)

Lori Swanson, Attorney General, Jacob Fischmann, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Halbrooks, Presiding Judge; Hudson, Judge; and Reilly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**REILLY**, Judge

Appellant Stephanie Ann Keim challenges the district court's order sustaining the revocation of her driving privileges under the implied consent law, arguing that the district court wrongly admitted hearsay evidence regarding the traffic stop. Appellant

further argues that the warrantless urine test was unconstitutional and her right to counsel was not vindicated. We affirm.

**FACTS**

On April 14, 2013, Deputy Bobbi Olson of the Wright County Sheriff's Office was assigned to a high priority call involving a threat of suicide. While traveling southbound on County Road 12, Deputy Olson caught up to a vehicle driven by appellant. Deputy Olson saw appellant's vehicle cross over the center line six or seven times, veer to the right shoulder, and strike the curb before correcting back into the driving lane. Deputy Olson contacted Deputy Nick Lee to assist in stopping appellant's vehicle while Deputy Olson continued to her initial destination. While speaking with Deputy Lee, Deputy Olson saw appellant's vehicle veer off to the right and strike the curb again. Deputy Olson shared her observations regarding appellant's driving conduct with Deputy Lee while the officers were speaking on the phone. Appellant's vehicle slowed down and continued to drive on the shoulder, at which point Deputy Olson determined it was unsafe to let appellant continue driving and initiated a traffic stop.

Deputy Lee arrived at the scene and Deputy Olson continued to the high priority call. Deputy Lee approached the vehicle at 9:23 p.m. and noticed that appellant had bloodshot and watery eyes, slurred speech, and smelled of an alcoholic beverage. Appellant admitted to Deputy Lee that she had consumed two alcoholic drinks. The officer conducted a series of standard field sobriety tests and administered a preliminary breath test, which revealed an alcohol concentration of .153. The officer placed appellant under arrest for suspicion of driving under the influence and transported her to jail.

2

At 10:07 p.m., Deputy Lee read appellant the Minnesota implied consent advisory. Appellant asked to speak to an attorney and a telephone was made available to her. Appellant said she did not have the telephone number for her attorney and Deputy Lee located the attorney's telephone number and dialed the telephone for her. Appellant spoke to someone at her attorney's office for several minutes and then stated that she was finished. Deputy Lee asked appellant if she would take a breath test and she refused. After speaking with her attorney a second time, appellant agreed to take a breath test and it was administered at 10:25 p.m.

Appellant did not blow enough air into the breath-testing machine and, after two attempts, it registered a deficient sample. The officer reread appellant the implied consent advisory at 10:50 p.m. and gave appellant another opportunity to speak with her attorney. Appellant attempted to call her attorney over 15 times but was unsuccessful. Deputy Lee reread the implied consent advisory and emphasized that if appellant was unable to contact an attorney she would have to make a decision on her own. Appellant made another telephone call and stated that she was done. Appellant agreed to take a urine test and the toxicology report showed an alcohol concentration of .15.

Appellant's driving privileges were subsequently revoked as a result of the chemical test. Appellant filed a petition seeking rescission of her driver's license revocation and challenging the constitutionality of the urine test. Appellant raised a hearsay objection at the implied consent hearing, challenging the basis for the initial stop because Deputy Olson was unavailable to testify at the hearing. The district court did not credit this argument. It determined that the standard for a motor vehicle stop was "less

3

than probable cause" under Minnesota Rule of Evidence 1101 and that "reasonable suspicion can be established by information received from other individuals." The district court sustained appellant's driver's license revocation and this appeal followed.

## D E C I S I O N

### I.

"Rulings on evidentiary matters rest within the sound discretion of the district court and will not be reversed on appeal absent a clear abuse of discretion." *In re Source Code Evidentiary Hearings in Implied Consent Matters*, 816 N.W.2d 525, 537 (Minn. 2012). An appellant has the burden of establishing that the district court abused its discretion and that the appellant was prejudiced. *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003).

Deputy Olson was unavailable to testify during the implied consent hearing. Deputy Lee was ready to testify at the implied consent hearing but never actually did. Instead the parties stipulated to the admission of the police reports and agreed that the district court could consider the reports in reaching its decision.

However, appellant argued that the district court should disregard what Deputy Olson told Deputy Lee on the telephone because those statements violated the hearsay rule. The district court concluded that reasonable suspicion could be established by information received from other individuals and would allow Deputy Lee's testimony regarding the initial traffic stop. The district court recognized that the rules of evidence apply "to all actions and proceedings in the courts of this state." Minn. R. Evid. 1101. Rule 1101 enumerates certain situations where the rules of evidence do not apply

4

including preliminary questions of fact, grand juries, contempt proceedings, and "miscellaneous" proceedings such as probable cause hearings. *Id*. The district court determined that, because "the standard for a motor vehicle stop is less than probable cause," the rules of evidence did not apply and Deputy Lee could testify as to the basis for the stop.

Appellant argues that the district court misapplied the rules of evidence by considering Deputy Lee's proffered testimony about what Deputy Olson told him regarding the basis for stopping appellant's vehicle, in violation of Minnesota's hearsay rules. It is well-settled that implied consent proceedings are civil in nature. *State v. Wagner*, 637 N.W.2d 330, 337 (Minn. App. 2001). Accordingly, the rules of evidence apply and reliable hearsay statements are admissible in implied consent proceedings. *See Heuton v. Comm'r of Pub. Safety*, 541 N.W.2d 361, 363 (Minn. App. 1995) (applying rules of evidence); *Kunz v. Comm'r of Pub. Safety*, 349 N.W.2d 593, 596 (Minn. App. 1984) (same).

Hearsay is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Minn. R. Evid. 801(c). Hearsay is admissible only when specifically provided for by the rules of evidence. Minn. R. Evid. 802. Hearsay may be admissible under certain exceptions, including statements of a declarant's then existing state of mind. Minn. R. Evid. 803(3). Rule 803(3) provides in relevant part that "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition" are not excluded by the hearsay rule.

5

Here, the record shows that while Deputy Lee and Deputy Olson were speaking on the telephone, Deputy Olson relayed her observations about appellant's driving conduct as it was happening. The state argues that Deputy Lee's testimony was admissible as an exception to the hearsay rule. To be admissible under the state-of-mind exception, "[t]he statement must be contemporaneous with the mental state sought to be proven," there must be "no suspicious circumstances suggesting a motive for the declarant to fabricate or misrepresent his or her thoughts," and the declarant's state of mind "must be relevant to an issue in the case." *State v. DeRosier*, 695 N.W.2d 97, 104-05 (Minn. 2005).

Deputy Olson's statements to Deputy Lee occurred contemporaneously with the vehicle stop, they were relevant to an issue in the case, and there has been no suggestion that Deputy Olson had a motive to fabricate her thoughts. Deputy Lee's testimony was admissible as a "statement of the declarant's then existing state of mind," Minn. R. Evid. 803(3), and the district court did not abuse its discretion in holding that Deputy Lee could testify regarding the basis for the stop of appellant's vehicle. Moreover, the district court's findings are supported by its consideration of Deputy Olson's police reports. During the implied consent hearing, appellant stipulated to the admission of the police reports, the implied consent advisory, and the test results. The parties agreed that the district court could consider the police reports in rendering its decision. Appellant has not challenged the trustworthiness of these police reports on appeal.

We are further persuaded by the state's argument that Deputy Lee's testimony was admissible under the collective-knowledge doctrine. Under this doctrine, "the entire knowledge of the police force is pooled and imputed to the arresting officer for the

6

purpose of determining if sufficient probable cause exists for an arrest." *State v. Conaway*, 319 N.W.2d 35, 40 (Minn. 1982). The collective knowledge of the police "may provide the basis for an investigatory stop," and the factual basis justifying an investigatory stop "need not be known to the officer acting in the field." *Magnuson v. Comm'r of Pub. Safety*, 703 N.W.2d 557, 559-60 (Minn. App. 2005). Thus, it is not necessary for the arresting officer to have firsthand knowledge of the facts substantiating the arrest. *State v. Radil*, 288 Minn. 279, 283, 179 N.W.2d 602, 605 (1970). Instead, an officer may act "on the strength of information received from the department." *Conaway*, 319 N.W.2d at 40. Here, the district court correctly recognized that "reasonable suspicion can be established by information received from other individuals" and imputed Deputy Lee with knowledge of the facts known by Deputy Olson in conducting the arrest. *See State v. Lemieux*, 726 N.W.2d 783, 789 (Minn. 2007) (imputing knowledge of officers involved in a search when some degree of communication existed between officers). We therefore conclude that the district court's reliance on the collective-knowledge doctrine was not an abuse of its discretion.

## II.

Appellant challenges the constitutionality of the warrantless chemical test. The United States and Minnesota Constitutions prohibit unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. A blood, breath, or urine sample constitutes a search. *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 616-17, 109 S. Ct. 1402, 1413 (1989); *State v. Brooks*, 838 N.W.2d 563, 568 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799 (2014). A warrantless search is valid "if the subject of the search

7

consents." *Id*. In order for the consent exception to apply, the state must show by a preponderance of the evidence that the defendant "freely and voluntarily consented." *Id*. Whether consent is voluntary must be determined on a case-by-case basis examining the totality of the circumstances. *State v. Lemert*, 843 N.W.2d 227, 233 (Minn. 2014) (citing *Missouri v. McNeely*, 133 S. Ct. 1552, 1563 (2013)). This analysis includes "the nature of the encounter, the kind of person the defendant is, and what was said and how it was said." *Brooks*, 838 N.W.2d at 569 (citation omitted).

Given the totality of the circumstances, the uncontested facts demonstrate that appellant's consent was freely and voluntarily given. Appellant performed field sobriety tests as requested by the officer, who also administered a preliminary breath test. Based upon her observations of these test results, the officer placed appellant under arrest and read her the implied consent advisory. The wording of the advisory is compelled by statute as set forth in Minnesota Statute section 169A.51, subdivision 2 (2012). Under Minnesota's implied consent law, anyone who drives a motor vehicle in the state consents to a chemical test for the purpose of determining the presence of alcohol when certain conditions are met. Minn. Stat. § 169A.51, subd. 1(a) (2012); *Brooks*, 838 N.W.2d at 569. A police officer may require someone to submit to a test when the officer "has probable cause to believe the person committed the offense of driving while impaired and the person has been lawfully arrested for driving while impaired." *Brooks*, 838 N.W.2d at 569. As part of the advisory, appellant was told both that Minnesota law requires the person to take a test and that refusing to submit to the test is a crime. Minn. Stat. § 169A.51, subd. 2(1)-(2).

Appellant contends that she was unable to consult with an attorney prior to taking the urine test. The Minnesota Supreme Court has articulated that under the right-to-counsel clause in article I, section 6 of the Minnesota Constitution, "an individual has the right, upon request, to a reasonable opportunity to obtain legal advice before deciding whether to submit to chemical testing." *Friedman v. Comm'r of Pub. Safety*, 473 N.W.2d 828, 835 (Minn. 1991). However, due to the "evanescent nature" of the evidence in DWI cases, the accused is only entitled to a limited amount of time within which to contact an attorney. *Id.* An individual's right to counsel is considered vindicated when he or she is provided with a telephone prior to testing and given a reasonable amount of time within which to contact and consult with an attorney. *Nelson v. Comm'r of Pub. Safety*, 779 N.W.2d 571, 574 (Minn. App. 2010).

Appellant was properly advised of her right to counsel. Deputy Lee read the implied consent advisory numerous times, each time explaining to appellant her right to consult with an attorney for the purpose of deciding whether to submit to a chemical test. Deputy Lee assisted appellant in finding her attorney's phone number and allowed her to use the telephone numerous times to seek counsel. Appellant spoke with an individual at her attorney's office prior to taking a breath test. The fact that she was unable to reach her attorney on subsequent attempts to discuss the urine test does not invalidate the test. Indeed, the right to counsel is vindicated even when the accused cannot locate his or her own attorney and there are no other attorneys the accused wishes to call. *Kuhn v. Comm'r of Pub. Safety,* 488 N.W.2d 838, 841-42 (Minn. App. 1992), *review denied* (Minn. Oct. 20, 1992). Appellant was given the opportunity to speak with an attorney

9

and agreed to submit to a urine test. The district court did not err in determining that appellant freely and voluntarily consented to a urine test after having a reasonable amount of time within which to consult with an attorney and sustaining the revocation of appellant's driving privileges.

**Affirmed.**