*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0556**

State of Minnesota,
Respondent,

vs.

Garry Leroy Gehrke,
Appellant.

**Filed May 11, 2015
Affirmed
Reyes, Judge**

Scott County District Court
File No. 70CR1215149

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Patrick J. Ciliberto, Scott County Attorney, Todd P. Zettler, Assistant County Attorney, Shakopee, Minnesota (for respondent)

Faison T. Sessoms, Jr., Minneapolis, Minnesota (for appellant)

Considered and decided by Bjorkman, Presiding Judge; Hudson, Judge; and Reyes, Judge.

**U N P U B L I S H E D   O P I N I O N**

**REYES**, Judge

On appeal from his convictions of fourth-degree driving while intoxicated, appellant argues that the district court erred in denying his motion to suppress because the officer lacked probable cause to arrest appellant. We affirm.

**FACTS**

On July 23, 2012, at approximately 12:30 p.m., a 911 call was placed regarding a potential burglary that had just occurred in New Prague. The caller, C.T., reported that he was upstairs with his wife when his dog became agitated. About ten minutes later, he heard the door to his home close. C.T. then ran to a window and observed a male individual leave his residence and get into a green Subaru Forester. C.T. told the dispatcher that he initially followed the Subaru in his own vehicle onto Highway 21 but stopped following once the Subaru headed out of New Prague towards Jordan. C.T. provided dispatch with the license-plate number, make and model of the vehicle, and a description of the individual.

Jordan Police Officer Jeffrey Strack was in the Jordan Police Department headquarters when he heard New Prague officers receive a radio call regarding the alleged interrupted burglary. Dispatch advised that there was a male in his fifties running from the scene. Dispatch also provided the vehicle description and license-plate number, which was then relayed to Officer Strack by New Prague officers who asked him to watch for the suspect's vehicle in Jordan.

After receiving this information, Officer Strack noticed a green Subaru Forester parked at Jack's Bar located near the Jordan Police Department. Officer Strack saw that the license-plate number matched the description provided to him by the New Prague officers. He activated his emergency lights and parked his squad car directly behind the Subaru. He then observed a single male occupant in the driver's seat of the Subaru who

2

matched the description of the burglary suspect provided by dispatch. The driver was later identified as appellant Garry Leroy Gehrke.

When Gehrke began to get out of the Subaru on his own, Officer Strack got out of his squad car, pointed at Gehrke, and yelled at him to turn around and put his hands on his head. Officer Strack testified that he had to do this three times before Gehrke complied. Once Gehrke had done so, Officer Strack walked up to Gehrke and placed him in handcuffs. As Officer Strack was escorting him back to the squad car, he detected an odor of alcohol coming from Gehrke. When Officer Strack asked if he had been drinking, Gehrke stated that he only had one beer. Officer Strack testified that approximately 40-45 minutes had passed from the time he received the initial dispatch call to the time he placed Gehrke in handcuffs.

Officer Strack administered a horizontal gaze nystagmus (HGN) test once Gehrke was placed in the back seat of his squad car. The HGN test revealed a lack of smooth pursuit and maximum nystagmus deviation. Gehrke also failed a preliminary breath test. Gehrke was transported to St. Francis Regional Medical Center where he agreed to provide a urine sample. The sample was collected at 1:45 p.m. and revealed an alcohol concentration of .11.

Gehrke was charged with one count of misdemeanor fourth-degree driving while impaired and one count of misdemeanor fourth-degree driving with an alcohol concentration of .08 or more within two hours.[1] Gehrke moved to suppress the evidence, arguing that his arrest was made without sufficient probable cause. After a contested

---

[1] Gehrke was not charged with burglary.

omnibus hearing, the district court denied his motion. To obtain review of the district court's order, Gehrke stipulated to the state's evidence and acknowledged that the pretrial issue—the legality of the arrest—was dispositive. *See* Minn. R. Crim. P. 26.01, subd. 4. The district court then found Gehrke guilty on both counts. This appeal follows.

## D E C I S I O N

"When reviewing a district court's pretrial order on a motion to suppress evidence, we review the district court's factual findings under a clearly erroneous standard and the district court's legal determinations de novo." *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008) (quotation omitted). We review reasonable suspicion and probable cause determinations de novo. *In re Welfare of G.M.*, 560 N.W.2d 687, 690 (Minn. 1997). But "[d]eference must be given to the district court's credibility determinations." *State v. Klamar*, 823 N.W.2d 687, 691 (Minn. App. 2012).

"The United States and Minnesota Constitutions protect 'the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *State v. Diede*, 795 N.W.2d 836, 842 (Minn. 2011) (quoting U.S. Const. amend. IV) (citing Minn. Const. art. I, § 10). The analysis of an investigative seizure "involves a dual inquiry. First, we ask whether the stop was justified at its inception. Second, we ask whether the actions of the police during the stop were reasonably related to and justified by the circumstances that gave rise to the stop in the first place." *State v. Askerooth*, 681 N.W.2d 353, 364 (Minn. 2004) (citing *Terry v. Ohio*, 392 U.S. 1, 19-20, 88 S. Ct. 1868, 1879 (1968)) (other citations omitted).

4

Here, Gehrke concedes that Officer Strack had a reasonable, articulable suspicion of criminal activity such that the initial stop was justified. However, Gehrke argues that there was no probable cause to justify converting the initial stop into a full custodial arrest. To resolve this issue, we must determine (1) at what point Gehrke was placed under arrest and (2) whether the state possessed sufficient probable cause to justify such an arrest.

## I. When the arrest occurred

To decide whether an individual is under arrest, we "determin[e], objectively and on the basis of the totality of the circumstances, whether a reasonable person in the defendant's shoes would have concluded that he or she was not free to leave." *In re Welfare of E.D.J.*, 502 N.W.2d 779, 783 (Minn. 1993). Gehrke contends that he was under arrest the moment he was placed in handcuffs because, under the circumstances, a reasonable person would not have felt free to leave. We agree. By the time Officer Strack first noticed an indication of intoxication—the odor of alcohol—he had activated his emergency lights and parked his marked squad car directly behind Gehrke's Subaru, preventing him from leaving. When Gehrke got out of the Subaru, Officer Strack ordered him to turn around and place his hands on his head. Once Gehrke complied, Officer Strack placed him in handcuffs and began walking him back to his squad car. The

totality of these circumstances would lead a reasonable person to conclude that he was under arrest and not free to leave.[2] *See id.*

## II. Probable cause to arrest

Having determined that Gehrke was under arrest, we next examine whether Officer Strack possessed sufficient probable cause to justify the arrest. Importantly, we note that because Officer Strack did not smell the odor of alcohol until after Gehrke was arrested, any probable-cause determination could only be based on a suspicion that Gehrke had committed the crime of burglary.

In Minnesota, first-degree burglary occurs when a defendant "enters a building without consent and with intent to commit a crime" and "the building is a dwelling and another person . . . is present in it when the burglar enters." Minn. Stat. § 609.582, subd. 1(a) (2010). First-degree burglary is a felony. *See* Minn. Stat. § 609.02, subd. 2 (2010) (defining a felony as "a crime for which a sentence of imprisonment for more than one year may be imposed"). Minnesota law allows for a warrantless arrest when a felony has been committed and the officer has reasonable cause for believing the person arrested committed it. Minn. Stat. § 629.34, subd. 1(c)(3) (2010). "The question of the legality of

---

[2] We recognize that the Minnesota Supreme Court has cautioned against automatically equating the use of handcuffs with an arrest, stating that "briefly handcuffing a suspect while the police sort out the scene of an investigation does not per se transform an investigatory detention into an arrest." *State v. Munson*, 594 N.W.2d 128, 137 (Minn. 1999). We note, however, that our conclusion that Gehrke was under arrest is not based solely on the fact that he was handcuffed. Gehrke's vehicle was blocked in by Officer Strack's squad car, and the squad car's emergency lights were activated. Moreover, this case is distinguishable from the facts of *Munson*, where the officer approached a vehicle with multiple suspects and had to use handcuffs to "sort out the scene" of the investigation. *Id.* at 137. No such "sort[ing] out" was required here as Gehrke was the only suspect.

the arrest turns not on the reasonableness or practicality of obtaining a warrant, but on the reasonableness of the arrest." *State v. Riley*, 568 N.W.2d 518, 523 (Minn. 1997). "We have held that 'reasonable cause' here and the 'probable cause' required by the Fourth Amendment are synonymous." *State v. Sorenson*, 270 Minn. 186, 196, 134 N.W.2d 115, 122 (1965). Probable cause exists "when a person of ordinary care and prudence, viewing the totality of circumstances objectively, would entertain an honest and strong suspicion that a specific individual has committed a crime." *State v. Ortega*, 770 N.W.2d 145, 150 (Minn. 2009) (emphasis omitted). "Probable cause is something more than a mere suspicion and something less than evidence that would sustain a conviction." *State v. Evans*, 373 N.W.2d 836, 838 (Minn. App. 1985), *review denied* (Minn. Nov. 1, 1985).

Additionally, Minnesota has adopted the "collective knowledge" approach in evaluating probable-cause determinations. *See State v. Radil*, 288 Minn. 279, 283, 179 N.W.2d 602, 605 (1970) ("In a metropolitan environment, with many police and fast-moving criminal activities, it is unrealistic to demand that each officer in the department personally know all the facts necessary to justify an arrest. The right to act must be judged by the total knowledge of the police department."). "Under the 'collective knowledge' approach, the entire knowledge of the police force is pooled and imputed to the arresting officer for the purpose of determining if sufficient probable cause exists for an arrest." *State v. Conaway*, 319 N.W.2d 35, 40 (Minn. 1982) (emphasis omitted). Thus, at the time of the arrest, Officer Strack was imputed with all of the knowledge of the police dispatcher.

The totality of the circumstances indicates that Officer Strack had "an honest and strong suspicion" that Gehrke had committed the crime of burglary in the first degree. *See Ortega*, 770 N.W.2d at 150. At the time of the arrest, Officer Strack knew that a New Prague homeowner had witnessed an individual leaving his yard after his dog had become agitated and after hearing his door close. Officer Strack knew that the individual left the scene in a green Subaru Forester and drove down Highway 21 towards Jordan. Officer Strack then observed a green Subaru Forester at Jack's Bar in Jordan with license-plate numbers matching those of the Subaru that left the scene in New Prague. Officer Strack also saw that Gehrke matched the description of the individual at the homeowner's residence.[3] Given these circumstances, we conclude that Officer Strack had "an honest and strong suspicion" that Gehrke had committed first-degree burglary and thus possessed the requisite probable cause to effectuate the arrest. *See id.*[4]

**Affirmed.**

---

[3] Gehrke argues that, for all Officer Strack knew, Gehrke could have been a voter-registration worker. This hypothesis is belied by the fact that Gehrke visited no other houses in the area and instead traveled immediately onto Highway 21, which is behavior inconsistent with a voter-registration worker.

[4] We note that it makes no difference that Gehrke was not eventually charged with burglary. "The evidence necessary to support a finding of probable cause is significantly less than that required to support a conviction." *State v. Harris*, 589 N.W.2d 782, 790 (Minn. 1999).