## STATE v. THEODORE ELKO LUCIOW.

240 N. W. 2d 833, 245 N. W. 2d 235.

March 26, 1976—Nos. 45483, 46876.

*Bergstein & Foster, Sherman Bergstein,* and *Curtis H. Foster,* for appellant.

*Warren Spannaus,* Attorney General, *Robert W. Johnson,* County Attorney, and *Dennis Schloss,* Assistant County Attorney, for respondent.

TODD, JUSTICE.

Defendant, Theodore Elko Luciow (Luciow), appeals his conviction on two counts of possession of a controlled substance. He contends the trial court erred in refusing to compel the prosecution to disclose the name of the informant whose information was the basis for the search warrant. Luciow also asserts as error the admission into evidence of substances obtained from his companion at the time of arrest, and certain prosecutorial comments regarding some of those substances.

Since the trial judge's resolution of the informant-disclosure problem affords no clear basis for inferring what his findings of fact and conclusions of law regarding that issue were, we re-

mand for reconsideration of that problem in light of the principles announced herein.

On September 10, 1973, Officer Wayne Billings of the Metropolitan Area Narcotics Squad obtained a search warrant for the search of Luciow, his home at 4220 Jackson Street Northeast in Columbia Heights, and three vehicles. In the affidavit in support of the search warrant, Officer Billings alleged that information constituting probable cause for the search had been transmitted to him by an informant who had demonstrated "herself/himself reliable in the past by giving your affiant information that has resulted in the issuance of other search warrants, the arrest and conviction of a number of narcotic violators and the seizures of various quantities of narcotic drugs." On the same date, Officer Billings and several other law enforcement officials executed the warrant at the Jackson Street address. Luciow was not present at the time the police arrived. After entering the house, Officer Billings discovered a quantity of suspected cocaine on top of a dresser, near some envelopes and other papers addressed to Theodore Luciow at 4220 Jackson Street Northeast.

Shortly thereafter, Luciow and a female companion, Lauren Reese (Reese), drove up to the house in one of the vehicles named in the search warrant, exited from the vehicle, and approached the house, but turned and fled after entering it. After running a short distance, defendant and Reese were stopped by Officer Billings who then conducted a search of both parties. Hashish and amphetamines were found in defendant's pockets, and methaqualone and marijuana were found in Reese's purse. While Officer Billings testified that Luciow stated at the time that all these items, including those found in Reese's purse, belonged to him, at trial Luciow denied having made such a statement.

At the Rasmussen hearing, Luciow claimed the right to inquire behind a search warrant affidavit valid on its face and further moved for disclosure of the identity of the confidential informant. In support of its challenge to the veracity of Officer

Billings' affidavit, the defense presented as a witness Elaine Stenseth (Stenseth), defendant's longtime girl friend and the mother of his child. Stenseth testified that she was the person who provided Officer Billings with the information referred to in the affidavit in support of the search warrant. She stated that she had done so because of her jealous anger at defendant at that time and further that she had never previously provided Officer Billings with information. Therefore, it was defendant's position that the affidavit recitations were false in that the informant had not proven herself reliable in the past, thus invalidating the search warrant and the arrest and search pursuant thereto. See, Aguilar v. Texas, 378 U. S. 108, 84 S. Ct. 1509, 12 L. ed. 2d 723 (1964); Spinelli v. United States, 393 U. S. 410, 89 S. Ct. 584, 21 L. ed. 2d 637 (1969); State v. Burch, 284 Minn. 300, 170 N. W. 2d 543 (1969). The testimony of Stenseth was purely subjective and was refuted by Officer Billings who testified that she was not the confidential reliable informant to whom his affidavit referred. Although he acknowledged that Stenseth occasionally gave him information about several people, he maintained that he never used the information because he did not consider her a reliable source. The trial judge sustained objections to all questions defense counsel attempted to ask of Billings which would have shed any light on the identity of the alleged reliable informer referred to in the affidavit.

Following the Rasmussen hearing, the trial court made oral findings and an order, and statement of supporting reasons. It is difficult to interpret precisely what the court below held as some of its rulings are inconsistent. On the one hand, the judge concluded that defendant did not establish by a preponderance of the evidence that the affidavit contained a false material statement and determined that all items taken from both defendant and Reese were constitutionally seized. On the other hand, the judge also characterized this case as presenting "a particularly difficult problem to the Court" in balancing the individual's right to be free from illegal searches and the public concern with law

enforcement, and he proceeded to make the following ruling, which he described as "extra-judicial": The first count, which charged defendant with possession of the cocaine that had been found in the house, was dismissed, and furthermore, the prosecution was barred from introducing any evidence regarding, or resulting from, the search of the house. However, the trial court permitted the introduction of substances obtained in the personal search of Luciow and Reese. The court also instructed the prosecutor's office to conduct a further investigation in the case to determine whether Officer Billings made any false statement in the affidavit or committed perjury in his testimony at the hearing, and to report its conclusions to the court.

■ Before addressing the central issue posed by this appeal— the extent to which the truth and accuracy of statements in a facially sufficient affidavit in support of a search warrant may be challenged—we must deal with the threshold issue of whether probable cause for the search of defendant and Reese can derive from any source other than the search warrant. The trial judge postulated another theory for finding probable cause, regardless of the warrant's validity, speculating that the officers may have gone to defendant's home to verify information given by the informant, rather than to execute the search warrant. This alternate theory is clearly refuted by Billings' testimony that his purpose was solely to execute the warrant. The legality of the arrest and search therefore must turn solely upon the warrant's validity.

■ We affirm the trial judge's apparent holding that a defendant in Minnesota is entitled to challenge the truthfulness and accuracy of statements in an affidavit in support of a petition for a search warrant. Although as recently as 1960 it could be said that most state courts prohibited any challenge by a defendant to the veracity of a facially sufficient affidavit, King v. United States, 282 F. 2d 398, 400, note 4 (4 Cir. 1960), and although the United States Supreme Court has expressly declined to rule on this issue, Rugendorf v. United States, 376 U. S. 528,

531, 84 S. Ct. 825, 827, 11 L. ed. 2d 887, 891 (1964), a number of more recent cases, both state and Federal, have taken the position we adopt here. [1]

The rationale for the old rule is that the Fourth Amendment's requirements are satisfied by the magistrate's ex parte evaluation, prior to issuing a search warrant, of the affiant's veracity; to require the affiant's credibility to again be subjected to scrutiny at a suppression hearing constitutes a waste of judicial resources and an impediment to efficient law enforcement. However, it should be noted that even some of the most eloquent advocates of a general proscription against such challenges nevertheless recognize that where a defendant has made an initial showing of a basis for doubting the truth of the affidavit's allegations, the problem may be quite different. E. g., United States v. Halsey, 257 F. Supp. 1002, 1005 (S.D.N.Y. 1966) (Frankel, J.).

In our analysis of what procedures will best effectuate the Fourth Amendment's prohibition of unreasonable search and seizures, we must be careful not to permit legitimate concerns with efficient and effective law enforcement to obscure that amendment's declaration that "no warrant shall issue but upon probable cause." Since search warrants issue without any opportunity for rebuttal of the allegations in supporting affidavits, if there were no opportunity for subsequent challenge thereto, there would be no deterrent to government agents' falsifying their affidavits in the hope that the resulting searches will yield conclusive proof of criminal conduct. This point of view

---

[1] See, e. g., United States v. Marihart, 492 F. 2d 897 (8 Cir. 1974); United States v. Carmichael, 489 F. 2d 983 (7 Cir. 1973); United States v. Dunnings, 425 F. 2d 836 (2 Cir. 1969), certiorari denied, 397 U. S. 1002, 90 S. Ct. 1149, 25 L. ed. 2d 412 (1970); United States v. Rael, 467 F. 2d 333 (10 Cir. 1972), certiorari denied, 410 U. S. 956, 93 S. Ct. 1429, 35 L. ed. 2d 690 (1973); United States v. Askins, 351 F. Supp. 408 (D. Md. 1972); People v. Alfinito, 16 N. Y. 2d 181, 264 N. Y. S. 2d 243, 211 N. E. 2d 644 (1965); State v. Logan, 18 N. C. App. 557, 197 S. E. 2d 238 (1973).

was eloquently expressed by Mr. Justice Schaefer of the Illinois Supreme Court, dissenting in the case of People v. Mitchell, 45 Ill. 2d 148, 155, 258 N. E. 2d 345, 349, certiorari denied, 400 U. S. 882, 91 S. Ct. 117, 27 L. ed. 2d 120 (1970):

"* * * If there can be no subsequent inquiry into the truth of those facts [relied upon to establish probable cause], the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures,' is protected only by an unreviewable ex parte determination of the lowest officer in the judicial hierarchy. And that determination may be based upon a hearsay report of the statements of an anonymous informer, which would be inadmissible in any judicial proceeeding. I cannot bring myself to believe that this is the 'probable cause, supported by Oath' required by the fourth amendment." [2]

■ Rule 11, Rules of Criminal Procedure, which provides for an omnibus hearing in felony and gross misdemeanor cases, establishes a forum in which a defendant may raise this challenge to the validity of a facially sufficient affidavit which we hereby authorize. Specifically, Rule 11.02, subd. 1, provides for a hearing, upon demand, on evidentiary issues specified in Rule 8.03. The court must then resolve such issues upon a review of the evidence which may be offered by the prosecution or the defense.

■ In applying this principle to the facts of the present case,

---

[2] The commentators on this question are virtually unanimous in endorsing a rule permitting a defendant to delve beneath the surface of a facially valid warrant as a constitutional imperative. E. g., Forkosh, *The Constitutional Right to Challenge the Content of Affidavits in Warrants Issued Under the Fourth Amendment,* 34 Ohio St. L. J. 297; Kipperman, *Inaccurate Search Warrant Affidavits As a Ground for Suppressing Evidence,* 84 Harv. L. Rev. 825; Mascolo, *Impeaching the Credibility of Affidavits for Search Warrants: Piercing the Presumption of Validity,* 44 Conn. B. J. 9; Comment, 53 Cal. L. Rev. 840; Note, 67 Col. L. Rev. 1529; Note, 51 Cornell L. Q. 822; Note, *The Outwardly Sufficient Search Warrant Affidavit: What If It's False?,* 19 U. C. L. A. L. Rev. 96.

we note that the trial judge did recognize a defendant's right to attack the truth of facts presented to the issuing magistrate "in appropriate situations," apparently defining such situations as those in which the defendant makes the initial showing prescribed by the Court of Appeals for the Seventh Circuit in United States v. Carmichael, 489 F. 2d 983 (7 Cir. 1973).[3] We affirm the trial court's apparent determination that defendant made the requisite showing in the instant case,[4] while rejecting the extreme positions proposed by each of the parties with regard to this issue, namely, appellant's assertion that all defendants should be entitled to challenge facially valid affidavits even without making an initial showing of falsehood, and respondent's contention that a facially sufficient affidavit should in all cases foreclose any further inquiry.

■  At the Rasmussen hearing the trial judge permitted defendant to launch a general attack on Officer Billings' credibility and upon the truth of his allegations in the affidavit. He sustained objections to all questions posed by defense counsel to Billings which bore on the identity of the alleged confidential reliable informer. The judge specifically denied defendant's motion for disclosure of the informant's identity. Although the record does not reveal the judge's precise reasoning in so acting, at least part of the explanation was his belief that "there has been no showing under the law of the right to do that."

If a defendant has presented sufficient evidence to challenge the veracity of an affidavit executed to obtain a search warrant, he is entitled to some form of disclosure of an informant's

---

[3] The Carmichael court held that a defendant is entitled to a hearing which delves below the surface of a facially sufficient affidavit if he has made an initial showing of either (1) any misrepresentation by the government agent of a material fact, or (2) an intentional misrepresentation by the government agent, whether or not material. United States v. Carmichael, 489 F. 2d 983, 988 (7 Cir. 1973).

[4] The specific evidence produced by defendant to support his challenge to the truth and accuracy of the search warrant affidavit is summarized *infra*.

identity if he can establish that such disclosure is necessary to complete his evidentiary attack on the supporting affidavit. In some cases where a police officer relies upon an informer, the defendant's right to inquire into the veracity of affidavits would be meaningless absent such disclosure. See, Note, *The Outwardly Sufficient Search Warrant Affidavit: What If It's False?*, 19 U. C. L. A. L. Rev. 96, 123. Rule 9, Rules of Criminal Procedure, impliedly provides for the disclosure of the informant's identity upon court order in those limited situations where it is clear that such information is essential to the establishment of probable cause. See, A. B. A. Standards for Criminal Justice, Discovery and Procedure Before Trial (Approved Draft, 1970) *Commentary*, § 2.6.

■ Once a sufficient prima facie showing is made at the omnibus hearing that an affidavit on the basis of which a warrant was issued contains material false statements, the trial court shall, pursuant to principles set forth in McCray v. Illinois, 386 U. S. 300, 87 S. Ct. 1056, 18 L. ed. 2d 62 (1967), and Roviaro v. United States, 353 U. S. 53, 77 S. Ct. 623, 1 L. ed. 2d 639 (1957), require disclosure of the identity of a confidential informant whose information is relied upon in the affidavit. This determination must be molded to the particular nature of each case presented and will require a resolution by the court of the conflicting demands of the individual's right to a fair trial or assessment of probable cause and the established evidentiary privilege protecting the secret identity of confidential informants.

This court has not in the past ordered disclosure of the identity of a confidential informant, in the context of either a trial on the merits or an inquiry into the existence of probable cause, but has espoused the theory enunicated in McCray v. Illinois, *supra*, and Roviaro v. United States, *supra*. See, State v. Villalon, 305 Minn. 547, 234 N. W. 2d 189 (1975) ; State v. Werber, 301 Minn. 1, 221 N. W. 2d 146 (1974) ; State v. Radil, 288 Minn. 279, 179 N. W. 2d 602 (1970), certiorari denied, 401 U. S. 921, 91 S. Ct.

910, 27 L. ed. 2d 825 (1971); State v. DeSchoatz, 280 Minn. 3, 157 N. W. 2d 517 (1968); State v. Purdy, 278 Minn. 133, 153 N. W. 2d 254 (1967). Each of these decisions denying a request for disclosure is carefully phrased to allow the future granting of such a request upon a sufficiently compelling initial showing not found therein. For example, we stated in State v. Wiley, 295 Minn. 411, 422, 205 N. W. 2d 667, 676 (1973):

"* * * No fixed rule with respect to disclosure is justifiable. The public's interest in protecting the flow of information must be balanced against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony and other relevant factors. * * * We have considered all of the circumstances of this case and have concluded that the trial court's refusal to order disclosure was neither contrary to the decisions of this court nor a denial of due process."

Appellant in the present case made a far more persuasive prima facie showing that the search warrant affiant made material misrepresentations than did defendants in earlier Minnesota cases on this general issue. Appellant adduced the following evidence, suggestive of a special informant status on Stenseth's part, and of an attempt by Billings to shield her identity as an informant:

(1)   At the preliminary hearing on October 30, 1973, Officer Billings denied that he remembered the name of anyone who was in defendant's home during the search on September 10, 1973. Yet, he acknowledged that he met with Stenseth, who was one of those persons, immediately after the search, and also that he took her into custody and ate birthday cake with her in her apartment on October 4, 1973. Nevertheless, Billings persisted in denying knowledge of Stenseth's name at the suppression hearing. This testimony tended to impeach his credibility and

to suggest that he was attempting to conceal his relationship with Stenseth.

(2) Many of the events during the search of defendant's house square with the defense theory that Stenseth was Billings' informant. Stenseth was taken into a separate room by Billings during the search and was also kept separate from defendant during the search. Furthermore, Stenseth tried, with Officer Billings' permission, to telephone Luciow before his arrival. In addition, she met with Officer Billings immediately following Luciow's arrest for purposes of inspecting Luciow's brother's home. This special treatment tends to indicate a preexisting relationship between Stenseth and Billings. The fact that none of the persons in the Luciow house, including Stenseth, was arrested, despite the fact that cocaine was found in the open, in their presence, is also consistent with Stenseth's being the informant. There was specific testimony that drugs were taken from her person at the Luciow house, yet she admittedly was not arrested.

(3) The events of October 4, 1973, when an automobile carrying defendant and Stenseth was stopped by Officer Billings for a narcotics search, also comport with the theory that Stenseth was the informant. Following the stop, Stenseth was taken to the Minneapolis Police Department Narcotics Division by Officer Billings. On the same day, a warrant was obtained by Minneapolis Police Officer Paul Stanton for a second search of Luciow's home. The affidavit supporting that warrant application stated that the undisclosed informant described therein was the same informant who had provided the basis for the September 10, 1973, warrant in the present case. The fact that the informants were the same was admitted by Officer Billings.

Ms. Stenseth testified that she had been the informant whose information led to the October 4, 1973, stopping and arrest, just as she had been the informant with respect to the September 10, 1973, warrant. Stenseth's testimony as to her informant's status was corroborated by the fact that she was not criminally charged

on October 4, 1973, by the fact that Officer Billings took her home from the narcotics office on that date, and by the fact that he tarried in her apartment to partake of birthday cake.

Defendant's initial showing in the present case is similar to that held by the Court of Appeals for the Eighth Circuit in United States v. Hurse, 453 F. 2d 128 (8 Cir. 1971), to warrant an in-camera revelation to the trial court of the informant's identity so that the trial court could satisfy itself as to the existence of probable cause. There, as here, while sufficient evidence was discovered to convict the defendant for the crime with which he was charged, the probable cause for the initial seizure rested entirely on information provided by a confidential informant. Furthermore, in that case, as in this one, testimony directly controverting that of the arresting officers was provided primarily by defendant's girl friend. Finally, again as in the present situation, the finder of fact in the Hurse case (a jury) resolved the conflicting testimony in favor of the police officers and against the defendant and his girl friend. 453 F. 2d 131, note 2. On this record, the Eighth Circuit court remanded the cause to the trial judge so that the informer's identity could be disclosed to him. The Court of Appeals also directed the judge to grant the motion to suppress if his interrogation of the informant convinced him that there was no probable cause for the police to make their initial entry into the defendant's premises.

In the present case, the record is ambiguous as to the trial judge's reasons for denying disclosure; his oral order and findings suggest both that he felt defendant had not made any showing of a need for such disclosure and that he believed defendant had no legal right to such disclosure. Therefore, we remand the case to the trial court for a determination of whether, on the basis of defendant's evidence attacking Officer Billings' credibility, defendant should be granted either open-court disclosure or an in-camera investigation as to the informant's identity. [5]

---

[5] This was the disposition made by the Rhode Island Supreme Court in State v. Cofone, 112 R. I. 760, 315 A. 2d 752 (1974), where the record

One factor which the trial court should bear in mind in making this determination is Officer Billings' voluntary, unsolicited assertion, during the Rasmussen hearing, that he would "be more than happy to tell the Court in Chambers" who the informant was.

For the sake of clarity, we list the possible dispositions of this issue on remand:

(1) The trial judge could determine that the evidence presented during the Rasmussen hearing afforded sufficient basis for a finding that probable cause did exist.

(2) The trial judge could determine that probable cause cannot be established in the absence of some disclosure—in camera or otherwise—regarding the informant's identity. In this case, there are three possible outcomes:

(i) The prosecution may refuse to make the ordered disclosure, in which case the trial judge should dismiss its case against defendant;

(ii) The trial judge could determine, on the basis of the ordered disclosure, that probable cause did exist;

(iii) The trial judge could determine, on the basis of the ordered disclosure, that probable cause did not exist.

If the judge finds, pursuant to the alternatives outlined in either (1) or (2)(ii), that there was probable cause for the issuance of the warrant, then the trial which resulted in defendant's conviction properly followed that determination. We note also that if the trial court finds that probable cause existed, its order suppressing evidence relating to, and stemming from, the search of defendant's home was erroneous. If, on the other hand, the trial judge finds, pursuant to (2)(iii), that probable cause cannot be established, then all the items seized from defendant,

---

did not reveal whether or not the trial judge ruled against disclosure because he thought the rule of law did not authorize disclosure, and the state supreme court had adopted the rule that a trial judge must require disclosure if he determines it necessary to a decision as to whether the police officer-affiant is a believable witness.

including those taken from his person and from Reese's person, should have been suppressed as "the fruit of the poisonous tree," the conviction should be vacated and a judgment of dismissal should be entered. See, Wong Sun v. United States, 371 U. S. 471, 83 S. Ct. 407, 9 L. ed. 2d 441 (1963).

We have considered the remainder of the contentions defendant raised on appeal and find them to be without merit.

Remanded for further proceedings in accordance with this opinion.

On August 13, 1976, the following order was filed:

The appeal of Theodore Elko Luciow from the trial court's order of April 14, 1976, wherein the trial court, subsequent to an in camera hearing, made a determination that probable cause existed for a search of the defendant-appellant's home, is hereby dismissed sua sponte.

BY THE COURT

/s/ John J. Todd

Associate Justice

MEMORANDUM

No appeal as of right lies from an order determining that probable cause existed for a search. Rule 29.02, Rules of Criminal Procedure. Moreover, we decline to exercise our discretion to allow defendant to appeal from an order not otherwise appealable, as permitted by Rule 29.02, subd. 3, since we do not find that the interests of justice would be served by such appeal.

In our original opinion, we carefully considered the entire record and all alleged errors raised by appellant. We affirmed the judgment below in all respects, except that we remanded to allow the trial judge to reconsider and clarify his initial determination that probable cause for the issuance of the search warrant herein did exist in accordance with our opinion. The trial judge decided that further in camera interrogation of the search warrant affiant was necessary to a determination of the probable cause issue. His conclusion, following such interrogation, that probable

20

cause existed, reflects his judgments as to the credibility of the affiant and the credibility of defense witnesses, judgments which do not lend themselves to review by an appellate court which has no opportunity to observe the witnesses or to evaluate their credibility.