**STATE of Minnesota, Respondent,**

v.

**James Alan MARSHALL, Appellant.**

**No. C2-86-1910.**

Court of Appeals of Minnesota.

Sept. 1, 1987.

Review Denied Oct. 26, 1987.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Alan L. Mitchell, St. Louis Co. Atty., John E. DeSanto, Asst. Co. Atty., Duluth, for respondent.

C. Paul Jones, State Public Defender, Marie Wolf, Asst. State Public Defender, Minneapolis, for appellant.

Considered and decided by NIERENGARTEN, P.J., and FOLEY and RANDALL, JJ., with oral argument waived.

## OPINION

NIERENGARTEN, Judge.

Appellant James Marshall was convicted of possession of cocaine with intent to sell, Minn.Stat. § 152.09, subd. 1(1), with reference to Minn.Stat. §§ 152.01, subd. 4, 152.-02, subd. 3(1)(d) and 152.15, subd. 1(2); possession of marijuana, Minn.Stat. § 152.09, subd. 1(2), with reference to Minn.Stat. §§ 152.01, subd. 4 and 9, 152.02, subd. 2(3) and 152.15, subd. 2(2); fleeing a police officer in a motor vehicle, Minn.Stat. § 609.-487, subd. 3; and driving after revocation, Minn.Stat. § 171.24. Marshall claims his fourth amendment rights were violated by a search of his automobile following his arrest and a search of his home pursuant to a search warrant. He also claims error was committed in the refusal to compel disclosure of informants' identity and in improper closing argument by the prosecutor. Finally, he contends the trial court abused its discretion in departing durationally from the guidelines. We affirm.

## FACTS

Around midnight on January 13, 1986, Duluth police officers stopped Marshall for fleeing a police officer, reckless driving and driving after revocation. When they went to arrest him, they saw Marshall move over to the passenger side of his sports car and move his hand to his side. Marshall struggled with one of the officers while several other police officers arrived on the scene. At one point Marshall got his hand underneath the car near the back wheel.

Marshall's car was inventoried and a plastic baggie stuffed in the mag slots of the rear wheel was discovered, containing a white powdery substance. Marshall was searched at the police station and $4,700 in cash was found in a pocket between his leather coat and liner.

Police obtained a search warrant based primarily on information from confidential, reliable informants. Marshall had been the subject of a police investigation regarding possible cocaine trafficking for several months. The police went to Marshall's home that morning with Marshall. As they drove up Marshall said, "It's your lucky day. The place is dirty."

In the search police recovered plastic baggies, pipes, bindle-type paper, a triple beam gram scale, five bags of vegetable matter alleged to be marijuana, a glass vial, a large mirror covered with powdery substance, razor blade, a series of writings and papers which appeared to be drug transactions, and a bottle of Mannitol. Bureau of Criminal Apprehension (BCA) analysis revealed that the white powder recovered from Marshall's car was 39.2 grams of cocaine. Powdery traces on the scale and in the Mannitol bottle also were found to be cocaine. Mannitol is a cutting agent for cocaine. The vegetable matter found in Marshall's house was identified as approximately 17 ounces of marijuana. The next day a second search warrant was executed at Marshall's house. Further bindles of cocaine were discovered.

On January 15, 1986 Marshall appeared in court and appeared to be gesturing to Jill Nagle that he wanted her to obtain bail money. Police soon learned that the First Bank in Duluth had a safety deposit box held jointly by Nagle and Cassandra Landstrom, a Duluth bail bond agent.

Landstrom told police that after she met with Marshall in jail about obtaining a bail bond, he told her that in his home he had three packages containing $60,000. He directed Nagle to go with Landstrom and told Nagle to give Landstrom the money that she needed. The money was hidden in the rear of a large screen television set. Landstrom and Nagle took the remaining money to the bank and opened a safety deposit box. A search warrant was obtained and police recovered $40,000 in cash from the safety deposit box.

Following his convictions, Marshall was sentenced to concurrent prison terms of 34 months for possession of cocaine with intent to sell, 13 months for possession of marijuana, one year for fleeing a police officer and 90 days for driving after revocation.

## ISSUES

1. Was the search of appellant's automobile following his arrest unconstitutional?

2. Was the search of appellant's home pursuant to a search warrant unconstitutional?

3. Did the trial court err in refusing to compel disclosure of confidential informant's identity?

4. Did the prosecutor commit misconduct during closing argument?

5. Did the trial court abuse its discretion in departing upwards durationally from the sentencing guidelines?

## ANALYSIS

### I.

Marshall was lawfully arrested following a high speed chase and was taken into custody. At the omnibus hearing the record established that Marshall's car was going to be towed from its position in a snow bank and its contents were to be inventoried, pursuant to routine Duluth Police Department practice.

In *Colorado v. Bertine,* —— U.S. ——, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987) the United States Supreme Court held that the fourth amendment does not prohibit the State from proving criminal charges with evidence discovered during an inventory search of the defendant's van. In *Bertine* the defendant was arrested for DWI and his van was inventoried before the arrival of a tow truck. A closed backpack containing controlled substances and a large amount of cash were discovered inside the van. The Supreme Court noted that inventory searches are now a well-defined exception to the warrant requirement. *Id.* at 741. The Court discussed the policy behind this exception as protecting an owner's property from claims of loss, theft, or vandalism, and to protect the police from danger. *Id.* The Court relied on previous inventory cases, *Illinois v. Lafayette,* 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983) and *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976).

█ *Bertine* is controlling in this case. Further, the result is reinforced by *State v. Rodewald,* 376 N.W.2d 416 (Minn.1985), where the Minnesota Supreme Court held that police, pursuant to standardized procedures, may conduct an inventory search of any arrestee who is jailed and, as part of such a search, may examine all of the items, including the contents of the arrestee's wallet.[1]

Finally, we note that Marshall never contested the admissibility of the baggie of cocaine seized from outside the rear tire of his car at the omnibus hearing and arguably he has forfeited this issue on appeal. *State ex rel. Rasmussen v. Tahash,* 272 Minn. 539, 555, 141 N.W.2d 3, 14 (1965); *State v. Brunes,* 373 N.W.2d 381, 386 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Oct. 11, 1985).

### II.

Marshall challenges the admission of evidence seized from his home pursuant to the search warrant issued January 13 and 14, claiming the affidavits in support of the warrants failed to establish probable cause. The presence of probable cause is determined under a "totality of the circumstances" test:

> The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*State v. Wiley,* 366 N.W.2d 265, 268 (Minn. 1985) (quoting *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)).

Great deference is given to the issuing judge's determination of probable cause.

---

1. In addition, Marshall's expectation of privacy must be deemed less with respect to the area in the outside of his rear tire as compared to Bertine's expectation of privacy in his backpack inside his car. *See State v. Nace,* 404 N.W.2d 357 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. Jan. 25, 1987).

*Wiley,* 366 N.W.2d at 268. The United States Supreme Court stated in *Gates:*

> [W]e have repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. A magistrate's "determination of probable cause should be paid great deference by reviewing courts." "A grudging or negative attitude by reviewing courts toward warrants," is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant; "courts should not invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a common-sense manner."

*Gates,* 462 U.S. at 236, 103 S.Ct. at 2331 (citations omitted).

A reviewing court is merely to decide "whether the evidence viewed as a whole provided a 'substantial basis' for the Magistrate's finding of probable cause * * *." *Massachusetts v. Upton,* 466 U.S. 727, 732–33, 104 S.Ct. 2085, 2088, 80 L.Ed.2d 721 (1984).

■ The omnibus hearing court did not err in concluding that the magistrate had a substantial basis for concluding that probable cause existed and in refusing to suppress the evidence seized from Marshall's home.

### III.

Both the omnibus hearing court and trial court refused to compel disclosure of the identity of the four confidential informants referred to in the search warrant affidavits. The trial court ordered an in-camera hearing to determine if the confidential, reliable informants could provide any exculpatory evidence which would assist Marshall's defense, *State v. Luciow,* 308 Minn. 6, 240 N.W.2d 833 (1976), and after questioning two of the informants, ruled that none could provide any exculpatory evidence.

■ Marshall has the ultimate burden of establishing the need for disclosure of the informant's identity. *State v. Ford,* 322 N.W.2d 611, 614 (Minn.1982). When the informant is merely a tipster who conveys information and is not an active participant in or witness to the offense, disclosure is not required. *State v. Purdy,* 278 Minn. 133, 153 N.W.2d 254, 262 (1967). The charges against Marshall were based primarily from his possession of narcotics, bookkeeping records and currency. The information supplied by the informants was only used to obtain the search warrants. The trial court did not err in concluding that Marshall did not make a sufficient showing of need for the disclosure of the informants' identity.

### IV.

■ Marshall claims the prosecutor committed misconduct in six instances during closing argument. We note that defense counsel did not object to five of the instances raised and generally, review is forfeited when no objection has been made. *State v. Marquetti,* 322 N.W.2d 316, 317 (Minn. 1982). Even considering all of Marshall's allegations, the allegations involve less serious misconduct and the prosecutor's comments did not likely play a substantial part in influencing the jury's verdict. *State v. Caron,* 300 Minn. 123, 127, 218 N.W.2d 197, 200 (1974).

### V.

The trial court ruled that Marshall's offense was a severity level III offense and with the criminal history of 3, his presumptive sentence was 17 months stayed. The court double departed durationally to 34 months and departed dispositionally by executing the sentence. Marshall challenges only the durational aspect of the departure.

The Minnesota Sentencing Guidelines list as an aggravating factor for departure

> (5) The offense was a major controlled substance offense, identified as an offense or series of offense relating to trafficking in controlled substances under circumstances more onerous than the usual offense. The presence of two or more of the circumstances listed below are aggravating factors with respect to the offense:
>
> \*　　\*　　\*　　\*　　\*　　\*

(b) the offense involved an attempted or actual sale or transfer of controlled substances in quantities substantially larger than for personal use; or

\* \* \* \* \* \*

(e) the circumstances of the offense revealed the offender to have occupied the high position in the drug distribution hierarchy;

\* \* \* \* \* \*

Minnesota Sentencing Guidelines II.D. 2.b.(5).

The trial court based the departure on sections (b) and (e). Our review of the record supports the trial court's determination.

The evidence at trial established that Marshall was in possession of 39.2 grams of cocaine. The amount of cocaine was a larger quantity than for normal use. Marshall had $4,700 in cash on him when he was arrested. Writings recovered from his home showed over $100,000 in cocaine transactions had occurred recently. Hidden in his television was $60,000 in cash and in his home on the morning of his arrest were a gram scale with traces of cocaine, razor blades, paper bindles and other items associated with cocaine trafficking, including various cutting agents. We conclude that there was sufficient evidence for the court to conclude the offense involved quantities of cocaine substantially larger than for personal use and that Marshall was in a high position in the drug distribution hierarchy. *See State v. Zeigler*, 356 N.W.2d 736 (Minn.Ct.App.1984). The court did not abuse its discretion in its durational departure.

The State's contention that we should correct a sentencing error by imposing a 42 month sentence (based on a corrected severity level IV offense and a presumptive 21 month term) need not be addressed since the State did not appeal the sentence as it could have under Minn.R. Crim.P. 28.04.

## DECISION

Marshall's fourth amendment rights were not violated by an inventory search of his automobile following his arrest or by a search of his home pursuant to a search warrant. He was not denied a fair trial by the court's refusal to compel disclosure of confidential, reliable informant's identity and by alleged misconduct by the prosecutor during closing argument. The trial court did not abuse its discretion in departing durationally from the sentencing guidelines because he was involved in a major controlled substance offense.

Affirmed.