# STATE v. JAMES R. CLARK.

176 N. W. (2d) 123.

April 3, 1970—No. 41207.

*C. Paul Jones*, State Public Defender, and *Rosalie E. Wahl*, Assistant State Public Defender, for appellant.

*Douglas M. Head*, Attorney General, *William B. Randall*, County Attorney, and *Steven C. DeCoster*, Assistant County Attorney, for respondent.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Theodore B. Knudson, JJ.

THEODORE B. KNUDSON, JUSTICE.[*]

This is an appeal from a judgment of the district court adjudging defendant, James R. Clark, guilty of the crime of uttering a forged instrument in violation of Minn. St. 609.625, subd. 3.

On or about Friday, October 28, 1966, a man came into Chili George's Bar, located in St. Paul. He had three drinks and then asked the owner, George Weinzetl, to cash a $250 draft. The draft was drawn on the State Farm Mutual Auto Insurance Company and payable to LeRoy Broda. The man told Weinzetl that he had a claim; that the insurance company had delayed paying for a couple of months but finally had paid. Weinzetl, although he did not know the man, believed his story and cashed the check. The check was endorsed "LeRoy Broda, 251 Dayton Ave." It was forged.

When the draft was returned a week later, Weinzetl reported it to the police. During the investigation, the police showed Weinzetl five "mug shots" of known forgers who the police felt might be involved. Weinzetl identified the picture of the defendant as the one who passed the draft.

Defendant was indicted on March 28, 1967, for the crime of uttering a forged instrument and was convicted following a jury trial.

The prosecution established that a book of State Farm Mutual Auto Insurance Company claim payment drafts was either stolen or mislaid in July 1966; that the draft which was cashed at Chili George's Bar was from that book of drafts; and that LeRoy Broda's wallet with all his identification was stolen from him. George Weinzetl identified the defendant as the man who cashed the draft. At the time of the in-court identification, defendant was seated in the spectators' section in the courtroom and LeRoy Broda was also present in that section of the courtroom. Weinzetl had not seen defendant at any time after the draft was cashed,

---

[*] Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

but he had seen his picture on the day he made the identification to the police from the "mug shots."

Having given the requisite notice under State v. Spreigl, 272 Minn. 488, 139 N. W. (2d) 167, the prosecution proved that on or about October 26, 1966, another forged draft of State Farm was cashed at Lorence Recreation, a bar and bowling alley in St. Paul. This draft also was endorsed "LeRoy Broda, 251 Dayton." George Dorle, owner of Lorence Recreation, identified the defendant as the one who cashed the draft. Dorle remembered that particular draft because the defendant told him it was an insurance payment for injuries to his children and that he had been waiting for it for months. Dorle didn't remember whether or not he had asked for identification. On cross-examination Dorle stated the police had shown him photographs from which he identified defendant. The "mug shots" were received in evidence by stipulation of the parties.

The issues raised by this appeal are: Whether defendant was deprived of a fair trial by the introduction of evidence that defendant was identified from "mug shots," thereby demonstrating to the jury that he had a prior record; and whether there was sufficient evidence as to his identification to sustain the conviction.

■ It is well established that the prosecution may not introduce evidence to prove the commission of other offenses by the defendant except to prove identity, intent, knowledge, or a common scheme or plan. See, State v. Billstrom, 276 Minn. 174, 149 N. W. (2d) 281. Testimony that the defendant was identified from "mug shots" puts his prior record before the jury.

This court has disapproved the use of testimony by the prosecution which shows that the accused was identified from police "mug shots." The photographs are necessarily limited to those who have prior records. State v. Gluff, 285 Minn. 148, 172 N. W. (2d) 63; State v. Madison, 281 Minn. 170, 160 N. W. (2d) 680. As the court said in Gluff, "* * * common experience in the trial of criminal cases [shows] that testimony of identifica-

tion from such a gallery makes defendant's conviction almost a foregone conclusion." 285 Minn. 152, 172 N. W. (2d) 65.

While it is true that the prosecutor was the first to bring out that the accused was identified from "mug shots," the defense made no objection. In fact, defense counsel made a vigorous attempt to cast doubt on the validity of the identification. Later, the defense by stipulation allowed the photographs to be received in evidence. Under these circumstances, it can only be said that defendant waived his right to claim that such identification testimony was erroneously received. State v. Gluff, *supra*; State v. Collins, 276 Minn. 459, 150 N. W. (2d) 850, certiorari denied, 390 U. S. 960, 88 S. Ct. 1058, 19 L. ed. (2d) 1156; State v. Lund, 277 Minn. 90, 151 N. W. (2d) 769; State v. Schumann, 280 Minn. 48, 157 N. W. (2d) 758. Defendant cannot challenge this method of identification at trial in order to attack the credibility of the identification and then on appeal argue that he was denied a fair trial because evidence of the method of identification was admitted.

■ Defendant contends that the identifications by Weinzetl and Dorle were not sufficient to sustain his conviction. It is true that the prosecution made no effort to have the endorsement on the check examined by an expert to see if it was defendant's handwriting; that Weinzetl was 79 years old, needed glasses, and became very confused on cross-examination; and that Dorle was shown defendant's photograph just before trial. But the evidence is sufficient to sustain the conviction.

This court has repeatedly upheld convictions where the only identification evidence was the testimony of a witness or witnesses. State v. Burch, 284 Minn. 300, 170 N. W. (2d) 543; State v. LaValla, 283 Minn. 202, 167 N. W. (2d) 36; State v. Garrity, 277 Minn. 111, 151 N. W. (2d) 773; State v. Sutton, 272 Minn. 399, 138 N. W. (2d) 46.

The identification procedure followed in this case was not unduly prejudicial so as to taint his conviction. United States v. Wade, 388 U. S. 218, 87 S. Ct. 1926, 18 L. ed. (2d) 1149; Gilbert

v. California, 388 U. S. 263, 87 S. Ct. 1951, 18 L. ed. (2d) 1178; Stovall v. Denno, 388 U. S. 293, 87 S. Ct. 1967, 18 L. ed. (2d) 1199; Simmons v. United States, 390 U. S. 377, 88 S. Ct. 967, 19 L. ed. (2d) 1247. In these cases the Supreme Court abandoned the rule that the manner of an extrajudicial identification affects only the weight and not the admissibility of identification testimony. In Foster v. California, 394 U. S. 440, 89 S. Ct. 1127, 22 L. ed. (2d) 402, the Supreme Court reversed a conviction based on identification testimony because the court found that the manner of the extrajudicial identification was so unduly prejudicial that it denied defendant due process of law. In that case the police kept after the witness until he identified defendant as the robber. In the first lineup there were only three men and defendant was 6 inches taller than the others. The witness was not sure; so the police arranged a one-to-one confrontation. The witness was still not sure. Ten days later, a second lineup was held with defendant the only man who had been in the first lineup. This time the witness was "convinced" defendant was the man.

This case does not have those elements that made the identification in Foster prejudicial. Weinzetl identified defendant's photograph from a group of five men. There is not even a hint in the record that the police in any way suggested which picture Weinzetl should select. After that Weinzetl never saw defendant or his picture until the trial, at which time defendant was allowed to sit in the visitors' section from where Weinzetl identified him. Dorle was shown defendant's picture just before trial, but apart from that he was positive in his identification at trial by reason of the unusual circumstances which occurred when the check was cashed. Defense counsel brought out these facts on cross-examination and it was for the jury to decide what weight to give this identification. Simmons v. United States, 390 U. S. 377, 384, 88 S. Ct. 967, 971, 19 L. ed. (2d) 1247, 1253.

We conclude that the verdict of the jury is supported by the evidence.

■ The problems which identification testimony raises are

424

mainly evidentiary questions and as such should be determined at the trial court level as part of a Rasmussen-type hearing. As this court stated in State ex rel. Rasmussen v. Tahash, 272 Minn. 539, 556, 141 N. W. (2d) 3, 14:

"The procedure which we have outlined deals only with evidence obtained as the result of a search and seizure and evidence consisting of or produced by confessions on the part of the defendant. However, the steps which have been suggested as a method of dealing with evidence of this type will indicate to counsel and to the trial courts that the pretrial consideration of other evidentiary problems, the resolution of which is needed to assure the integrity of the trial when conducted, will be most useful and that this court encourages the use of such procedures wherever practical."

Affirmed.