## STATE v. CARL MONROE BISHOP.

183 N. W. (2d) 536.

January 22, 1971—No. 41946.

*Douglas W. Thomson, John R. Wylde, Jr.,* and *Jack Nordby,* for appellant.

*Douglas M. Head,* Attorney General, *James Kelley,* Assistant Attorney General, *William B. Randall,* County Attorney, and *Steven C. DeCoster,* Assistant County Attorney, for respondent.

Heard before Knutson, C. J., and Nelson, Murphy, Kelly, and Rosengren, JJ.

MURPHY, JUSTICE.

Appeal from an order denying defendant's motion for judgment of acquittal notwithstanding the verdict or, in the alternative, for a new trial. Defendant was found guilty of the crime of aggravated robbery. He presented no testimony in defense to the charge at trial but now contends that he should have a reversal because of the court's failure to suppress testimony of eyewitnesses to the offense.

It appears from the record that about 9:30 p. m. on the evening of January 20, 1968, defendant and his accomplice entered Sharrett's Raymond Avenue Pharmacy in St. Paul. Present on the premises were the owner, Ben Rose; his son, Dana; and employees James Forsland and Michael W. Logan, who were working about the place. The intruders physically attacked Mr. Rose, knocking him to the floor. Forsland came to his assistance. Defendant drew a .45-caliber pistol and held Mr. Rose, his son Dana, and Forsland at gunpoint while his partner proceeded with the robbery. Rose, Dana, Forsland, and Logan were forced to lie on the floor. When the intruders had trouble opening the cash register, Forsland was required to help them. They then took approximately $2,500 in cash and left, ordering Rose and the others to remain where they were. Logan, who had been working in another part of the premises, and James A. Strain, a customer, had entered the store while the robbery was going on. The facts are not in dispute. The only issue is whether defendant was one of the two robbers.

On the Monday following the Saturday on which the robbery occurred, the witnesses were separately interviewed by the police and shown a group of photographs. Rose identified defendant's picture from a group of four or five photographs as probably being one of the robbers. Forsland identified one photograph among the number shown to him. Logan testified that the police showed "between half a dozen to ten" photographs to him and that he recognized defendant's picture among them. The customer, Strain, also testified that he identified defendant's photograph among five shown him by the police officers about two weeks before the trial. The process of viewing and identifying the photographs was conducted with the witnesses separately.

On an evening in February 1968, Ben Rose was asked to view a lineup at police headquarters in St. Paul. He sat facing a glass enclosure, and the police paraded four men before him, each of whom appeared individually. The defendant, the second man in line, was identified by Rose as one of the robbers. Also attending

this lineup were Dana Rose and Forsland. Dana Rose was unable to identify anyone in the lineup. Forsland identified defendant as one of the robbers. He also identified defendant in a six-man lineup held later in Minneapolis. Logan attended a five-man lineup in Minneapolis, at which time he identified defendant as one of the robbers. At all times during these lineups defendant's attorney was present.

At trial, Rose, Forsland, and Logan positively identified defendant as one of the robbers. Forsland testified that defendant forced him to open the cash register and that he observed defendant take the money from it. His identification of defendant was from his recollection of him as he appeared on the night of the robbery. The customer, Strain, who observed the actions of defendant on the premises for about 15 minutes on the night of the robbery, identified him and said that he saw him standing by the cash register with a gun in his hand, taking money from the register, and wiping the register off with his glove.

■ The first point raised by defendant, as expressed in his brief, is: "When the prosecution intends to elicit testimony from eyewitnesses identifying a defendant as the perpetrator of a crime, the defendant, upon a motion to exclude such testimony, is entitled to a pretrial, in camera fact hearing to determine whether the procedures employed to secure identification violated constitutional standards." In support of his contention that the trial court erred in denying his motion to exclude the testimony of witnesses who would testify against him, defendant relies upon United States v. Wade, 388 U. S. 218, 87 S. Ct. 1926, 18 L. ed. (2d) 1149; Stovall v. Denno, 388 U. S. 293, 87 S. Ct. 1967, 18 L. ed. (2d) 1199; and Foster v. California, 394 U. S. 440, 89 S. Ct. 1127, 22 L. ed. (2d) 402. The thrust of these authorities is to protect an accused from prejudice which may result from contrived identification by prospective witnesses through lineup procedures. They hold that the lineup is a critical stage of the prosecution at which defendant is as much entitled to the aid of counsel as at trial itself; that both defendant and

his counsel are entitled to notice of the proposed lineup; and that the presence of counsel is a requisite condition of such lineup in the absence of an intelligent waiver. U. S. Const. Amends. V and VI.

We fail to see how these authorities may be properly applied to the facts in this case. Defendant's counsel was present at all times when defendant was exposed to lineup or showup proceedings. If anything had occurred which would indicate a denial of due process in connection with such proceedings, it would be expected that counsel would have called the court's attention to it. In denying defendant's motion for the pretrial hearing on the question of identification, the trial court observed that no "claimed improprieties in the holding or in the method in which the line-up or show-up was staged" were called to his attention. He did not feel that he was warranted in holding a pretrial discovery proceeding on the bald assertion of counsel that those proceedings were tainted with irregularity. On the contrary, as the trial court noted, the constitutional rights of defendant were observed and protected throughout the investigation and trial.

■ Defendant makes the additional claim that language found in State v. Clark, 286 Minn. 419, 176 N. W. (2d) 123, required the court to hold a pretrial hearing on the motion to suppress identification testimony. In answer to this point, it may be said that problems which identification testimony raise are mainly evidentiary and may be determined at the trial level as part of a pretrial hearing on suppression of evidence. This may be done in the manner provided in State ex rel. Rasmussen v. Tahash, 272 Minn. 539, 141 N. W. (2d) 3. State v. Clark, *supra,* does not say that a pretrial hearing on the trustworthiness of identification testimony must be held whenever such testimony is to be used or whenever a pretrial hearing thereon is requested. Although there may be circumstances where a so-called "Rasmussen hearing" might be employed to examine the admissibility of proposed identification testimony, such hearing should not be used for discovery purposes or as a device for delay. While we

have, by a number of authorities, required pretrial discovery and disclosure of evidence to prevent prejudicial use against a defendant in a criminal case,[1] we are not prepared to say that in every situation where identification witnesses may be used, their testimony should be filtered or tested by a pretrial proceeding. While it may well be that circumstances may arise which indicate that, in fairness, a pretrial hearing should be had with reference to proposed identification evidence, the decision as to whether or not there should be a pretrial hearing thereon must be left to the sound discretion of the trial court, to be exercised in light of all the surrounding circumstances. In the case before us, defendant sought to engage in a pretrial exploratory proceeding in the hope that something favorable to his defense might be discovered. However, as the trial court properly observed:

"There must be some point at which criminal matters can proceed to trial without 'one more' pretrial hearing brought on at the whim of the defendant."

We do not think the trial court abused his discretion in denying the motion. He fully considered the merits of defendant's request and denied it because there was no showing that it would serve any purpose other than delay of trial. In the memorandum accompanying the order denying defendant's post-trial motion, the court stated:

"* * * The rights of a defendant to certain pretrial hearings upon motion have been well documented and are observed; but,

---

[1] Most prominent is State ex rel. Rasmussen v. Tahash, 272 Minn. 539, 141 N. W. (2d) 3, which established the rule that before any evidence relating either to a search and seizure or to a confession may be introduced by the prosecution, the defense must be given advance written notice of the probable evidence. In State v. Spreigl, 272 Minn. 488, 139 N. W. (2d) 167, we established similar procedure with respect to "other crimes" evidence. See, also, State v. Grunau, 273 Minn. 315, 141 N. W. (2d) 815, with reference to "Jencks Act" procedure to require prosecution disclosure of pretrial statements of witnesses.

this Court chooses to believe that where, in compliance with United States Supreme Court decisions, counsel of defendant's own choosing has been present throughout a line-up or other identification proceeding or confrontation, and such counsel makes no claim to the occurrence of any irregularity or illegality in the proceeding, and there is no contention by defendant that such counsel cannot or will not document any such claim, if any there be, the trial Court is not, under those circumstances, routinely required to conduct a pretrial hearing on the suppression of identification testimony merely because the defendant demands one."

The court and counsel were undoubtedly cognizant of the fact that under the circumstances the proper course of action was to test the credibility of the proposed identification witnesses by cross-examination which could effectively disclose defects or infirmities in their identification. Counsel for defendant did do this and, in addition, fully argued that issue to the jury.

■ Defendant's claim that he was deprived of due process of law by photographic identification procedure prior to lineup may be disposed of by pointing to well-established authority which holds that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if such pretrial photographic identification procedure "was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U. S. 377, 384, 88 S. Ct. 967, 971, 19 L. ed. (2d) 1247, 1253. This court followed that rule in State v. Burch, 284 Minn. 300, 170 N. W. (2d) 543. See, also, State v. Clark, *supra,* and State v. Ellingson, 283 Minn. 208, 167 N. W. (2d) 55. From the facts in this case, we do not think it can be fairly said that the pretrial photographic identification procedure improperly gave rise to a false or mistaken identification.

■ It is next contended by defendant that the court erred in denying certain requested instructions which would have warned

the jury that testimony tending to prove identity is to be "scrutinized with extreme care." It is generally held that it is improper for the court to single out particular witnesses and charge as to their credibility. 19 Dunnell, Dig. (3 ed.) §§ 9786, 9787; 53 Am. Jur., Trial, § 615. It was held in State v. Tellock, 273 Minn. 512, 142 N. W. (2d) 64, that refusal of the court to give instructions on the degree of proof necessary to establish identity in a criminal case was not error where the matter of identity was adequately covered by a charge dealing with circumstantial evidence. However, in the later case of State v. Burch, 284 Minn. 300, 315, 170 N. W. (2d) 543, 553, we observed by way of dicta that, when requested, "the court should instruct on the factors the jury should consider in evaluating an identification and caution against automatic acceptance of such evidence." This decision recognizes that while courtroom procedure must be left mainly to the discretion of the trial court, serious consideration should be given to such requests "where the circumstances raise any possible doubt in the court's mind as to the reliability of the identification." 284 Minn. 316, 170 N. W. (2d) 554. While the language of that decision recognizes as a matter of common knowledge that a witness may be mistaken in identification, it does not mean that such testimony is always inherently unreliable. The care with which a jury should be instructed with reference to this type of testimony must depend upon the particular circumstances in each case. We do not think that the trial court would have been warranted in giving the jury the impression that there was an inherent vice in the identification evidence. The trial court, in his memorandum, observed:

"As the trial progressed it clearly appeared to the Court, and apparently to the jury, from the testimony of all of the identification witnesses (all of whom were present during the course of the robbery) that their identification of the defendant throughout the entire sequence of events was based on observa-

tion made at the time of the robbery and that it was strong, unequivocal and thoroughly convincing."

It seems to us that, after the able counsel for defendant had fully tested the credibility of identification witnesses by cross-examination and further argued the same issue at length in his summation to the jury, the subject of the weight and credibility of this testimony had been completely exhausted. We are further satisfied that whatever was of real substance in the requested instructions was adequately covered by the court's general instructions with reference to the weight and credibility which the jury should give to the testimony of various witnesses.

Affirmed.