*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0885**

State of Minnesota,
Respondent,

vs.

Jyron Mendale Young,
Appellant.

**Filed March 23, 2015
Affirmed
Johnson, Judge**

Hennepin County District Court
File No. 27-CR-13-34271

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Kelly O'Neill Moller, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, St. Paul, Minnesota; and

Debra K. Kovats, Special Assistant State Public Defender, St. Louis Park, Minnesota (for appellant)

Considered and decided by Halbrooks, Presiding Judge; Johnson, Judge; and Larkin, Judge.

**UNPUBLISHED OPINION**

**JOHNSON**, Judge

A Hennepin County jury found Jyron Mendale Young[1] guilty of aiding and abetting attempted aggravated first-degree robbery. Young argues that the evidence is insufficient to support his conviction, that the district court erred in its jury instructions, that he received ineffective assistance of counsel, and that the district court erred in its sentence. We affirm.

**FACTS**

Young's conviction arises from an attempted robbery of a man who was walking on the sidewalk of a residential neighborhood in south Minneapolis in the early-morning hours of October 4, 2013. W.G. and his wife, B.W., went for a walk shortly after midnight after moving into a new apartment and unpacking their belongings. They were walking in a westerly direction on East 29th Street. W.G. carried B.W.'s purse in his hand and his wallet in his back pocket. When the couple approached the corner of 13th Avenue South, a small group of people came alongside them. One member of the group was B.W.'s cousin, who approached B.W. and gave her a hug. B.W. and her cousin walked ahead of W.G. The cousin turned around more than once to tell others in her group that B.W. is her cousin.

As W.G. was walking behind B.W., a man in a black jacket came alongside W.G. and said something like, "I'm ready." W.G. was then punched in the back of the neck,

---

[1]Appellant also is known as Jyron Woodard. The state identified him in the complaint as Jyron Mendale Young. Before trial, the district court granted appellant's motion *in limine* to be called Jyron Woodard during trial. Appellant's name appears in the caption of our opinion as Jyron Mendale Young because that is the way it appeared in the district-court caption. *See* Minn. R. Civ. App. P. 143.01. In addition, appellant signed his *pro se* supplemental brief as Jyron Mendale Young.

which caused him to fall to the ground and caused his vision to become "fuzzy." One assailant pulled on the purse that W.G. was carrying, while another reached into W.G.'s back pocket. At trial, W.G. described the two persons who attacked him as two black men, one wearing a black jacket and one wearing a red jacket.

B.W. turned around when she heard scuffling. She testified at trial that she saw a man in a black jacket and a man in a red jacket standing over W.G. B.W. ran to help W.G. but was knocked down by the man in the black jacket. While on the ground, B.W. began kicking, trying to get the assailants away from W.G., which caused one of her shoes to fall off. Meanwhile, W.G. got to his feet and was confronted by the man in the red jacket. W.G. described the man at trial as a dark-skinned man with "poufy" hair. After B.W. stood up, the man in the red jacket offered her the shoe that had fallen off her foot. Because she was afraid that the man might harm her, she refused the shoe and walked towards W.G. B.W. saw the assailants approach a red vehicle before they proceeded east on 29th Street.

W.G. called 911. Minneapolis Police Officers Todd Harder and Jeffrey Perkins responded in less than one minute. Officer Harder spoke with W.G. and B.W., who described the assailants as two black males, approximately 30 years old, one wearing a black and white jacket and the other wearing a red jacket. W.G. and B.W. then joined Officer Harder in his squad car to help him find the assailants. They found the man in the black jacket, and he was arrested. W.G. and B.W. later saw the man in the red jacket. Officer Harder was unable to apprehend him because only one squad vehicle was present.

W.G. and B.W. left the squad vehicle and walked back to the scene of the attempted robbery to find B.W.'s shoe. They again spotted the man in the red jacket and alerted a

3

nearby squad car. When the man was arrested, B.W. told the police officer that he was the "good one" because he had tried to return her shoe. But W.G. informed the police officer and B.W. that the man in the red jacket is the man who had hit him and tried to steal his wallet. Before he was placed in the squad car, the man in the red jacket told B.W. that he had left her shoe on top of a car. W.G. and B.W. later found the shoe on top of the red car that was parked near the scene of the attempted robbery.

After his arrest, the man in the red jacket was identified as Young. Later that morning, W.G. and B.W. provided statements to Sergeant Billy Peterson. Both W.G. and B.W. told Sergeant Peterson that they were certain that the assailants were the man in the black jacket and the man in the red jacket. Sergeant Peterson later interviewed Young, who stated that he was merely near the scene of the crime, standing on the southeast corner of East 29th Street and 12th Avenue South. Young said he observed a "two-on-two fight" involving two Native American females and "a little Mexican dude" and "a black dude." Young told Sergeant Peterson that, after the fight ended, he picked up B.W.'s shoe, offered it to her, and then left it on top of the red car.

The state charged Young with one count of aiding and abetting attempted aggravated first-degree robbery, in violation of Minn. Stat. § 609.245, subd. 1 (2012), and one count of aiding and abetting fifth-degree assault, in violation of Minn. Stat. § 609.224, subd. 1(2) (2012). The state voluntarily dismissed the fifth-degree assault charge before trial.

The case was tried over four days in January 2014. The state called five witnesses: W.G., B.W., Officer Harder, Officer Perkins, and Sergeant Peterson. Young did not present

4

any evidence. The jury found Young guilty. In February 2014, the district court sentenced Young to 34 months of imprisonment. Young appeals.

## D E C I S I O N

### I. Sufficiency of the Evidence

Young argues, both through counsel and in his *pro se* supplemental brief, that the state's evidence is insufficient to support his conviction. When considering a sufficiency-of-the-evidence claim, this court conducts "a painstaking analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction, was sufficient to permit the jurors to reach their verdict." *State v. Caine*, 746 N.W.2d 339, 356 (Minn. 2008) (quotation omitted). We assume that the jury "believed the state's witnesses and disbelieved any contrary evidence." *Gulbertson v. State*, 843 N.W.2d 240, 245 (Minn. 2014) (quotation omitted). "[W]e will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the charged offense." *State v. Ortega*, 813 N.W.2d 86, 100 (Minn. 2012) (citing *Bernhardt v. State*, 684 N.W.2d 465, 476-77 (Minn. 2004)).[2]

---

[2]In his *pro se* supplemental brief, Young contends that his conviction is based on circumstantial evidence. "Direct evidence" is "evidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption." *Bernhardt*, 684 N.W.2d at 477 n.11 (quotation and alteration omitted). "Circumstantial evidence," on the other hand, "is defined as evidence based on inference and not on personal knowledge or observation and all evidence that is not given by eyewitness testimony." *Id.* (quotation and alterations omitted). The state relied primarily on the testimony of W.G. and B.W., both of whom were present and able to observe the incident in which the offense was committed. The state's direct evidence is sufficient to support Young's conviction.

Young contends that the state's evidence is insufficient because it does not prove beyond a reasonable doubt that he was the man in the red jacket who participated in the attempted robbery. He contends that the state's evidence rests on the testimony of W.G., whose testimony, according to Young, was "weak and confusing." Young contends that W.G.'s testimony was not credible because W.G. was "under extreme stress while he was being attacked and even testified that his head 'lost reception' and his vision was fuzzy."

As an initial matter, we question Young's assertion that the state's case rests entirely on W.G.'s testimony. The state also presented the testimony of B.W., who was an eyewitness to the encounter. Young contends, however, that B.W.'s testimony does not help the state because she told police that Young "had done nothing wrong and, in fact, tried to help her." This is not a complete and accurate characterization of B.W.'s testimony. B.W. told a police officer when they apprehended Young on the evening of the crime that Young was the "good one," but she told Sergeant Peterson the day after the incident that she was confident that Young was one of the assailants. Also, she testified at trial that she was mistaken when she initially told the officer that the man in the red jacket was not involved in the incident. Furthermore, she testified at trial that two men stood over W.G. when the attempted robbery occurred, one of whom was wearing a red jacket, and she identified Young as the man who was wearing the red jacket.

In any event, Young's challenges to the state's witnesses' testimony is primarily a matter for the jury. Young contends that W.G. is not credible. But the evaluation of a witness's credibility also is for the jury, and we must assume that the jury believed the evidence supporting the state's case and disbelieved any contrary evidence. *State v.*

6

*Hanson*, 800 N.W.2d 618, 622 (Minn. 2011).  In this case, the jury had the opportunity to evaluate the credibility of W.G.'s testimony, and the verdict indicates that the jury adopted W.G.'s and B.W.'s version of the facts.  As Young acknowledges, the uncorroborated testimony of a single credible witness can sustain a conviction.  *State v. Bliss*, 457 N.W.2d 385, 390 (Minn. 1990).  Here, the state also offered the corroborating testimony of Officer Harder, Officer Perkins, and Sergeant Peterson.  They testified to the events of the night of the attempted robbery, the identifications of Young made by W.G. and B.W., and Young's statement that he was in the area of the crime at the time of the attempted robbery and witnessed the crime but did not take part in it.  Contrary to Young's contention, the state's case did not rest solely on W.G.'s testimony, and even if it did, we must defer to the jury's credibility determinations.

In sum, when viewed in the light most favorable to the verdict, the evidence is sufficient to support the conviction of aiding and abetting attempted aggravated first-degree robbery.

## II.  Eyewitness Instruction

Young also argues that the district court erred by not giving the jury an instruction concerning eyewitness identifications.

A district court must instruct the jury in a way that "fairly and adequately explain[s] the law of the case" and does not "materially misstate[] the applicable law."  *State v. Koppi*, 798 N.W.2d 358, 362 (Minn. 2011).  To determine whether jury instructions fairly and adequately explain the law of the case, the instructions must be viewed in their entirety. *State v. Milton*, 821 N.W.2d 789, 805 (Minn. 2012).  If an instruction "correctly states the

7

law in language that can be understood by the jury, there is no reversible error." *State v. Anderson*, 789 N.W.2d 227, 239 (Minn. 2010) (quotation omitted). A district court has "considerable latitude" in selecting language for jury instructions. *State v. Gatson*, 801 N.W.2d 134, 147 (Minn. 2011) (quotation omitted). Accordingly, we apply an abuse-of-discretion standard of review to a district court's jury instructions. *State v. Ndikum*, 815 N.W.2d 816, 818 (Minn. 2012).

At the instructions conference in this case, Young's trial counsel asked the district court to give the following instruction, which is a pattern instruction:

> Testimony has been introduced tending to identify the defendant as the person observed at the time of the alleged offense. You should carefully evaluate this testimony. In doing so, you should consider such factors as the opportunity of the witness to see the person at the time of the alleged offense, the length of time the person was in the witness's view, the circumstances of that view, including light conditions and the distance involved, the stress the witness was under at the time, and the lapse of time between the alleged offense and the identification. (If the witness has seen and identified the person before trial and after the alleged offense, you should also consider the circumstances of that earlier identification, and you should consider whether in this trial the witness's memory is affected by that earlier identification.)

*See* 10 Minnesota Dist. Judges Ass'n, *Minnesota Practice – Jury Instruction Guides* § 3.19, at 55 (5th ed. 2006). The district court denied Young's request, noting that the instruction might be appropriate in "certain circumstances" but reasoning that defense counsel was capable of challenging the eyewitness testimony in closing argument in the absence of the requested instruction, without the court effectively becoming "a witness."

On appeal, Young argues that "[b]y failing to advise the jury that it should not only evaluate [W.G.'s] credibility but also the reliability of [W.G.'s] identification, the [district] court created the likelihood that the jury automatically accepted his identification of Young as reliable." In response, the state contends that the district court adequately instructed the jury on its duty to determine witness credibility by giving this preliminary instruction at the beginning of trial:

> Now, as jurors one of your most important jobs is to evaluate the credibility of the witnesses and their testimony. In doing so, you should and may take note of the following: The circumstances under which the witness learned about the facts; the witness's ability to remember and tell the facts; the witness's interest in the outcome of the case; the relationship that the witness has to the parties; the witness's frankness and sincerity or the lack thereof; the reasonableness or unreasonableness of the witness's testimony; whether the witness's testimony is corroborated by or consistent with other believable evidence in the case; whether the witness has said something on a prior occasion which is inconsistent with his or her present testimony; whether the witness has been convicted of a crime, especially one involving dishonesty or false statement; and any other factor that bears on the question of the witness's believability and the weight to be given to their testimony. You should in the last analysis rely on your own experience, judgment and common sense when it comes to assessing the credibility of witnesses.

*See* 10 Minnesota Dist. Judges Ass'n, *Minnesota Practice – Jury Instruction Guides* § 3.12, at 44 (5th ed. 2006).

Our review of the record reveals that the district court's preliminary instruction adequately apprised the jury of potential issues concerning eyewitness identification. The preliminary instruction concerning witness credibility in general provided guidance to the jury with respect to testimony about an eyewitness identification. The preliminary

9

instruction accurately explained to the jury its duty to evaluate the credibility of the witnesses, and it provided the jury with numerous factors it should consider in making such an evaluation.

Young has not cited any opinion in which an appellate court has held that the refusal to give the requested instruction was error. The most favorable case cited in his brief is *State v. Bishop*, 289 Minn. 188, 183 N.W.2d 536 (Minn. 1971). In that case, the appellant argued that the district court had erred by denying his request for an instruction that warned about eyewitness-identification testimony. *Id.* at 194-95, 183 N.W.2d at 540. The supreme court noted that "serious consideration should be given to such requests where the circumstances raise any possible doubt in the court's mind as to the reliability of the identification," *id.* at 195, 183 N.W.2d at 540 (quotation omitted), but that a district court should not "giv[e] the jury the impression that there was an inherent vice in the identification evidence" if the evidence is not unreliable, *id.* at 195, 170 N.W.2d at 541. The supreme court ultimately rejected the appellant's argument because the district court's instructions adequately addressed the issue by referring to the weight and credibility of witness testimony, and because defense counsel had an opportunity to test the credibility of the state's witness on cross-examination and to challenge the weight and credibility of the state's evidence in closing argument. *Id.* at 196, 183 N.W.2d at 541. Similarly, in this case, the district court expressed its awareness of the caselaw making the requested instructions appropriate in "certain circumstances" but exercised its discretion by not giving the instruction in this case. Young has not persuaded us that W.G.'s and B.W.'s identification of Young, which was based in part on their pointing him out to an officer on the night of the

crime, is unreliable. Furthermore, Young's trial counsel had an opportunity to test the credibility of W.G. and B.W. on cross-examination and challenged their identifications in closing argument.

Young also argues that the district court erred because "CRIMJIGs are the law" and "the court is obligated to provide the law to the jury." Young is incorrect. The pattern jury instruction on which Young relies is not, in and of itself, binding law. There is no authority for the proposition that the pattern jury instruction at issue has been either adopted or approved by the supreme court. The pattern jury instructions are published by the Minnesota District Judges' Association and are simply a resource for district court judges and attorneys. *See Rowe v. Munye*, 702 N.W.2d 729, 734 n.1 (Minn. 2005). The pattern jury instructions merely "express the opinion of the Minnesota District Judges Association Committee on Criminal Jury Instruction Guides." *State v. Broulik*, 606 N.W.2d 64, 70 (Minn. 2000). The pattern jury instructions are not binding law. *See State v. Peterson*, 673 N.W.2d 482, 484 n.1 (Minn. 2004); *see also Rowe*, 702 N.W.2d at 734 n.1; *Broulik*, 606 N.W.2d at 70.

Thus, the district court did not err by refusing to give Young's requested jury instruction concerning eyewitness identification.

### III. Pro Se Arguments

In his *pro se* supplemental brief, Young makes two additional arguments.

### A.    Effectiveness of Counsel

Young argues that he received ineffective assistance of counsel. To prevail on a claim of ineffective assistance of counsel, Young "must affirmatively prove [1] that his

counsel's representation 'fell below an objective standard of reasonableness' and [2] 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Gates v. State*, 398 N.W.2d 558, 561 (Minn. 1987) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S. Ct. 2052, 2064, 2068 (1984)). A person seeking to establish a claim of ineffective assistance of counsel "bears the burden of proof on that claim." *State v. Jackson*, 726 N.W.2d 454, 463 (Minn. 2007). To satisfy that burden, an appellant "must do more than offer conclusory, argumentative assertions, without factual support." *See State v. Turnage*, 729 N.W.2d 593, 599 (Minn. 2007). An appellate court need not analyze both prongs of the *Strickland* test if an analysis of one prong is determinative. *Leake v. State*, 767 N.W.2d 5, 10 (Minn. 2009).

Young identifies eight different ways in which his trial counsel allegedly was ineffective: (1) by not meeting with Young before trial other than at court appearances, (2) by not challenging the issue of probable cause before trial, (3) by not moving to suppress certain evidence before trial, (4) by not moving for a judgment of acquittal, (5) by not challenging the state's identification evidence before trial, (6) by declining a jury instruction on Young's constitutional right to testify, (7) by not challenging the length of Young's sentence, and (8) by not conducting a more vigorous investigation before trial.

"Generally, an ineffective assistance of counsel claim should be raised in a postconviction petition for relief, rather than on direct appeal." *State v. Gustafson*, 610 N.W.2d 314, 321 (Minn. 2000). The reason for this general preference is that a "postconviction hearing provides the court with 'additional facts to explain the attorney's decisions,' so as to properly consider whether a defense counsel's performance was

12

deficient." *Id.* (quoting *Black v. State*, 560 N.W.2d 83, 85 n.1 (Minn. 1997)). Without those additional facts, "any conclusions reached by [an appellate] court as to whether [a defendant's] attorney's assistance was deficient would be pure speculation." *Id.*; *see also Arredondo v. State*, 754 N.W.2d 566, 571 n.4 (Minn. 2008); *Jackson*, 726 N.W.2d at 463; *State v. Barnes*, 713 N.W.2d 325, 335 (Minn. 2006). But if the trial record is sufficiently developed such that an ineffectiveness claim can be decided based on that record, an appellate court may consider the claim on direct appeal. *Torres v. State*, 688 N.W.2d 569, 572 (Minn. 2004). Given the record that was developed at trial in this case, we are able to review three of Young's ineffectiveness claims on direct appeal.

First, Young's fourth ineffectiveness claim is that his trial counsel was ineffective because he did not move for a judgment of acquittal. This claim is without merit because Young cannot establish the second requirement of the *Strickland* test, "'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *See Gates*, 398 N.W.2d at 561 (quoting *Strickland*, 466 U.S. 694, 104 S. Ct. at 2068). In this appeal, Young has challenged the sufficiency of the evidence, and we have concluded that the state's evidence is sufficient to support Young's conviction. *See supra* part I. A motion for judgment of acquittal would have tested the same body of evidence according to the same legal standard. *See State v. McCormick*, 835 N.W.2d 498, 506 (Minn. App. 2013), *review denied* (Minn. Oct. 15, 2013). Thus, even if Young's trial counsel unreasonably decided not to move for a judgment of acquittal, Young was not prejudiced.

Second, Young's sixth ineffectiveness claim is that his trial counsel was ineffective because he declined a jury instruction on Young's right to testify or not testify. This claim also is without merit because the trial record demonstrates that Young's trial counsel considered the potential advantages and disadvantages of such an instruction, advised Young of those factors on the record, and reasonably elected not to do so for strategic reasons. The district court specifically asked Young's trial counsel whether he wanted an instruction stating that Young had no obligation to testify, but Young's trial counsel explained that Young was "better off not redefining it." The record demonstrates that Young's trial counsel was adequately informed of the relevant factors and made a reasonable strategic decision to decline the instruction. We must give considerable deference to counsel's strategic decisions that are appropriately informed. *See Strickland*, 466 U.S. at 690-91, 104 S. Ct. at 2066. Thus, Young has failed to demonstrate that his trial counsel unreasonably declined a jury instruction on Young's right to testify or not testify at trial.

Third, Young's seventh ineffectiveness claim is that his trial counsel was ineffective because he failed to challenge his 34-month sentence. This claim is without merit because Young cannot establish the second requirement of the *Strickland* test, that the result of the sentencing hearing would have been different. *See Gates*, 398 N.W.2d at 561. In this appeal, Young has challenged his sentence in his *pro se* supplemental brief. We address it below. *See infra* part III.B. The analysis on direct appeal is substantively identical to the analysis that would have applied at the sentencing hearing because we apply the same legal

14

standard to the same record. Thus, even if Young's trial counsel unreasonably decided to not challenge the length of Young's sentence, Young was not prejudiced.

With respect to the remainder of Young's ineffectiveness claims, the record of the trial is not adequately developed. The trial record is silent as to, among other things, the extent of counsel's investigation of the relevant law and facts, whether any of counsel's decisions were based on strategic reasons, and whether any strategic decisions were reasonable. *See Strickland*, 466 U.S. at 690-91, 104 S. Ct. at 2066; *Barnes*, 713 N.W.2d at 335; *Gustafson*, 610 N.W.2d at 321. Young's arguments are more appropriate for a postconviction hearing, which "provides the court with additional facts to explain the attorney's decisions, so as to properly consider whether a defense counsel's performance was deficient." *Gustafson*, 610 N.W.2d at 321 (quotation omitted). Young's right to pursue his remaining ineffectiveness claims in a petition for post-conviction relief is preserved. *See Arredondo*, 754 N.W.2d at 571 n.4; *Jackson*, 726 N.W.2d at 463; *Gustafson*, 610 N.W.2d at 321.

**B.    Length of Sentence**

Young argues that the district court erred by imposing a sentence that is longer than authorized by the sentencing guidelines. Specifically, he contends that the district court should have imposed a sentence only half as long as the sentence that was imposed because he was convicted of aiding and abetting an attempted aggravated robbery, not a completed aggravated robbery.

Before sentencing, Young had three criminal-history points. The presumptive sentence for first-degree aggravated robbery, a level VIII offense, for an individual with

15

three criminal-history points, is 67 to 93 months, with a mid-point of 78 months.  Minn. Sent. Guidelines 4.A. (Supp. 2013) (sentencing guidelines grid).  A person who "attempts to commit a crime may be sentenced . . . to not more than one-half of the maximum imprisonment."  Minn. Stat. § 609.17, subd. 4(2) (2012).  In addition, the applicable guidelines range is one-half of the range that would apply to a completed offense.  Minn. Sent. Guidelines 2.G.2 (Supp. 2013).  In light of the statute and the guideline, the presumptive guidelines range applicable to Young is 33.5 to 46.5 months.  *See id.*  The district court imposed a sentence of 34 months, which is within the modified presumptive guidelines range.  Thus, the district court did not err by failing to impose a sentence half as long as the sentence that would apply to aiding and abetting a completed aggravated robbery.

**Affirmed.**